113 P.3d 743
The PEOPLE of the State of Colorado, Petitioner.
v.
Michael MILLER, Respondent.
No. 04SC414.
Supreme Court of Colorado, En Banc.
June 6, 2005.
Rehearing Denied June 27, 2005.1
 John W. Suthers, Attorney General, John J. Fuerst III, Assistant Attorney General, Denver, for Petitioner.
 David S. Kaplan, State Public Defender, Elizabeth Griffin, Deputy Public Defender, Denver, for Respondent.
 Justice KOURLIS delivered the Opinion of the Court.
 A jury convicted the defendant, Michael Miller, of, among other things, first-degree murder (after deliberation) and first-degree felony murder, rejecting Miller's affirmative defense of involuntary intoxication, and rejecting evidence that Miller's voluntary intoxication had negated the requisite mental state of first-degree murder (after deliberation). Under the doctrine of merger, the felony murder conviction and the first-degree murder (after deliberation) conviction merged, giving rise to only one sentence. Upon Miller's appeal, the court of appeals overturned the first-degree murder (after deliberation) conviction, on the basis of instructional error by the trial court. People v. Miller, No. 01CA1026, slip op. at 2, 2004 WL 916226 (Colo.App.2004) (not selected for publication). The court of appeals found plain error in the trial court's instruction concerning the impact of the defendant's intoxication on his culpable mental state. It held that the trial court failed to instruct the jury properly that "after deliberation" is a part of the culpable mental state of first-degree murder that can be negated by voluntary intoxication.
 On remand, as requested by the People, the court of appeals permitted the People a choice between retrial of the defendant for first-degree murder or entry of a conviction on the lesser included offense of second-degree murder. The People petitioned this court for review of the court of appeals' decision overturning the first-degree murder conviction, and in addition, requested that the felony murder conviction, rather than the conviction for second-degree murder be reinstated.2
 We granted certiorari3 and now reverse. First, we resolve the conflict among our cases concerning the standard of review applicable to allegations of constitutional error in the absence of a contemporaneous objection. We hold that where the defendant fails to object at trial, the plain error standard of review applies. We thereby reserve harmless beyond a reasonable doubt review for those cases in which the defendant preserved his claim for review.
 Applying a plain error standard of review in this case, we find no plain error. Plain error occurs only when, after review of the entire record, the appellate court concludes that the error undermined the fundamental fairness of the trial.
 Here, in reviewing the entire record, we cannot so conclude. First, the question of voluntary intoxication was not actually contested at trial, in that the defendant did not raise it as his defense. More importantly, we find overwhelming evidence in the record to support the first-degree murder conviction. We therefore reverse the court of appeals' decision overturning the defendant's first-degree murder (after deliberation) conviction.
 Finally, because we overrule the court of appeals' reversal of the first-degree murder (after deliberation) conviction, we need not reach the second issue presented. Thus, we decline to determine what the law requires when a first-degree murder conviction and felony murder conviction have merged, and the first-degree murder conviction is reversed.
 We reverse and remand for reinstatement of the defendant's first-degree murder (after deliberation) conviction.
 I. FACTS
 On March 8, 2000, police officers found Loyal Burner's lacerated body in his Federal Heights, Colorado mobile home. Michael Miller, a close friend, former roommate, and employee of Burner, confessed to killing Burner and subsequently stealing several items from the victim, including his vehicle. The Adams County District Attorney charged the defendant in an information with first-degree murder (after deliberation),4 first-degree felony murder,5 aggravated robbery, three counts of first-degree aggravated motor vehicle theft, vehicular eluding, and theft. Trial was to a jury between January and February of 2001.
 The defendant did not testify but, admitting responsibility for the death, he defended on grounds of self-defense to a sexual assault by the victim; involuntary intoxication caused by the victim; or alternatively, actions taken in a rage. In addition, sufficient evidence of self-induced intoxication emerged at trial, entitling him to a diminished capacity instruction, which is the subject of this petition. Evidence of Miller's defense was introduced through his taped confession and through testimony of witnesses to whom the defendant had given varying versions of the incident. The defendant also proffered expert opinion in support of his defense of involuntary intoxication.
 That evidence indicated that Miller had appeared at the victim's home on the date of the murder after consuming a small amount of methamphetamines. The victim appeared at the door naked and carrying a gun.6 Upon entering the mobile home, Miller said the victim sexually propositioned him, including a request that Miller perform oral sex on the victim. Miller added that the victim pointed the gun at him at that moment though he understood that the act was in jest. Miller said at some point the victim had also demonstrated muffling the sound of a gun shot. The victim returned the weapon to his gun cabinet.
 The victim then prepared two drinks for Miller, consisting of vodka and what appeared to be V8. Upon consuming the liquids, Miller said he felt dizzy or "delirious" and could not maintain his composure and balance. He suspected the victim had "slipped him a mickey."7 Some time later, Miller said he located a hatchet and concealed it from the victim, anticipating that he would later have to use it to defend himself against an impending sexual assault attempt by the victim. He exited the mobile home to "catch some air" or otherwise regain his composure. He re-entered and fell asleep, or blacked out for a period of one to two hours. The defendant said he awoke in the victim's bedroom but could not recall how he ended up there. The victim was sexually assaulting him at that moment. The victim's gun was on the dresser, then the victim was either holding it, or the gun was nearby the victim. Miller said he "flung" the gun away from the victim and struck him in the neck using his elbow. He then grabbed the hatchet from beneath the bed and levied several blows to the victim's head while the victim was "scuffling" with Miller. Miller hid behind the door and waited for the victim to bleed to death. He then used a flashlight to locate several of the victim's belongings, including the hatchet, several hundred dollars in cash, titles, a VCR, tools, walkie talkies, and a gun collection, all of which he placed in a box and carried to the victim's truck. He drove away in the victim's truck.
 Autopsy results revealed that the victim was struck four times in the same location of his head and that he died in the early morning hours of March 5, 2000. The forensic pathologist testified that the location of the victim's wounds was consistent with his being in a stationary position when struck and therefore not "scuffling."8 Also, although the defendant told police that the victim had made him perform oral sex on the victim while he, Miller, was unconscious, DNA tests did not discover the defendant's saliva DNA on the victim. Lastly, although Miller claimed to have struck the victim in the neck with his elbow while they were scuffling, autopsy results revealed no signs of trauma to the victim's neck.
 Federal Heights police first contacted Miller on March 10, two days after discovering Burner's body. Miller informed them that he had last seen the victim in the early evening of March 4, stating the victim had dropped him off after they had gone four-wheeling. Miller offered that he was with a friend, Nathasha Zimmerman, near the time of the murder. Zimmerman testified that, shortly after he spoke with police, Miller contacted her to serve as false alibi for him and asked her to dispose of certain items he took from the victim's home. Furthermore, several witnesses revealed different versions of the circumstances surrounding the murder as disclosed by Miller. Those versions did not include sexual assault, or suspicions of a "mickey" in his drink, or drunkenness. Lastly, the jury also heard testimony from Miller's girlfriend indicating that he "waited for the right moment" to strike the victim with the hatchet.
 At the close of trial, the court gave the jury several instructions relating to the culpable mental state of first-degree murder (after deliberation). The court instructed the jury on the defendant's affirmative defense of involuntary intoxication, and that instruction is not at issue here. Concerning the impact of voluntary intoxication on the culpable mental state, the court directed the jury to consider "evidence of self-induced intoxication in determining" whether it "negates the existence of the culpable mental state of specific intent." The court also informed the jury that they must find the defendant not guilty if they found that he "was intoxicated to such a degree that he did not form the specific intent, which is a required element of Murder in the First-degree After Deliberation." In separate instructions, the court informed the jury that "after deliberation" is an element of first-degree murder and that the defendant raised an affirmative defense (of involuntary intoxication). The court also gave the jury a definition of "after deliberation" and informed the jury that "after deliberation" and "intent" form part of the culpable mental state of first-degree murder. The court did not give the jury a definition of "specific intent" and did not instruct the jury that it could consider evidence of self-induced intoxication for purposes of negating the after deliberation element of first-degree murder. Miller did not object to the instructions or tender alternative instructions.
 The jury returned guilty verdicts on all counts. Miller appealed, contending, in part, that the jury instructions impermissibly lowered the People's burden of proving beyond a reasonable doubt that he premeditated the murder.
 The court of appeals reversed Miller's first-degree murder conviction, finding reversible error in the trial court's failure to instruct the jury specifically that it could consider evidence of intoxication as negating the "after deliberation" element of first-degree murder. Miller, No. 01CA1026, slip op. at 2. The court found the instruction inconsistent with our decision in People v. Harlan, 8 P.3d 448 (Colo.2000). Id. at 4. The court was persuaded that, faced with evidence that Miller was intoxicated at the time of the murder, the jury might have found him guilty even after surmising that he did not commit the murder after the requisite deliberation. Id. at 5. It therefore concluded that the trial court committed plain error. Id.
 The People petitioned from that decision and we granted the petition.
 II. CONSTITUTIONAL ERROR REVIEW
 Before addressing the merits of the People's case, we first consider the conflict among our cases concerning the appropriate standard of review for unobjected-to constitutional errors. As noted, the defendant did not object to the diminished capacity instruction the trial court gave the jury. Nonetheless, he posits that the challenged instruction is an error of constitutional dimension which requires reversal unless proved harmless beyond a reasonable doubt, even if not preserved at trial.
 Our cases are contradictory on the question of whether a contemporaneous objection is required for the application of a constitutional harmless error standard of review. See Auman v. People, 109 P.3d 647 (Colo. 2005) (noting conflicts). We have, at times, refused to apply that standard in the absence of an objection, holding instead that plain error controls our review of unpreserved constitutional claims. See People v. Garcia, 28 P.3d 340, 344 (Colo.2001); People v. Griego, 19 P.3d 1, 8 (Colo.2001); People v. Dunlap, 975 P.2d 723, 737 (Colo.1999); Walker v. People, 932 P.2d 303, 311 (Colo.1997); People v. Rubanowitz, 688 P.2d 231, 239 (Colo.1984). On other occasions, we have resolved that where the challenged matter is of constitutional dimension, the error must be proved harmless beyond a reasonable doubt even if no objection was proffered. See People v. Harlan, 8 P.3d 448, 490 (Colo.2000); People v. Davis, 794 P.2d 159, 189 (Colo.1990); People v. Rodgers, 756 P.2d 980, 984 (Colo.1988); People v. Graham, 705 P.2d 505, 509 (Colo. 1985).
 This latter proposition is inconsistent with the current direction from the United States Supreme Court. Originally, our cases applying constitutional harmless error analysis to unobjected-to constitutional errors found root in the Supreme Court's statement in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See Rodgers, 756 P.2d at 984; Graham, 705 P.2d at 509; see also Davis, 794 P.2d at 189 (relying on Rodgers); Harlan, 8 P.3d at 490 (relying on Rodgers, Graham, and Davis). In Chapman, the Court affirmatively rejected an automatic or per se reversal rule for all constitutional errors, concluding that some constitutional errors are subject to harmless error analysis. 386 U.S. at 19, 87 S.Ct. 824; see also Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The Court then fashioned the applicable harmless error standard for review of constitutional errors—that the error must be found harmless beyond a reasonable doubt. Id. at 22, 87 S.Ct. 824. The Court, however, did not address whether constitutional errors are also subject to plain error analysis. Rather, the court was presented with the narrow issue, "Where there is a violation of the rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, can the error be held harmless."9 Id. at 18, 87 S.Ct. 824.
 The Court's more recent decisions have, however, made clear that even constitutional errors are subject to a plain error standard of review. In United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court held that unpreserved constitutional claims are subject to plain error analysis. In so doing, the Court reaffirmed the fundamental precept governing relinquishment of unpreserved claims: "`No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, `may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" Id. Shortly thereafter, the Court reaffirmed Olano in Johnson v. United States, applying plain error to the trial court's erroneous failure to submit an element of the crime to the jury, when the defendant failed to object contemporaneously to the instruction. 520 U.S. 461, 463, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).
 Three years later in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court appeared to lay to rest any doubt about whether constitutional harmless error analysis applies to all errors of constitutional magnitude. There, faced with an issue similar to that addressed in Chapman, the Court distinguished between errors that "defy analysis by harmless error standards," and therefore mandate automatic reversal, and those that, upon objection by the defendant, are subject to harmless beyond a reasonable doubt analysis. Id. at 7, 119 S.Ct. 1827. The Court identified structural errors, "defects affecting the framework within which the trial proceeds," as those demanding automatic reversal. Id. at 8, 119 S.Ct. 1827. In contrast, "trial errors," that is, "errors in the trial process itself," may be subject to either harmless error or plain error analysis. Id. at 8-9, 119 S.Ct. 1827.10
 The Court did not disapprove of its prior holdings in which it had applied plain error analysis to constitutional errors. To the contrary, it found those decisions "instructive." Id. at 8, 119 S.Ct. 1827. Addressing Johnson, the Court classified elemental omissions and mis-descriptions as trial errors, pointing out that it had applied plain error where the defendant failed to object to the trial court's omission of an element in the jury instruction. See Id. The interplay between Neder and Johnson illustrates the Court's preferred treatment of trial errors in which the defendant fails to object. The Court addressed almost identical issues in both cases, namely, the standard of review where the trial court failed to submit the element of materiality to the jury.11 In Neder, 527 U.S. at 5, 119 S.Ct. 1827, the defendant objected, while in Johnson, the defendant did not object, 520 U.S. at 463, 117 S.Ct. 1544. In Neder, 527 U.S. at 8, 119 S.Ct. 1827, finding the instructional error to be one of constitutional magnitude not mandating automatic reversal, the Court applied constitutional harmless error analysis; but the court subjected the unobjected-to claim in Johnson, 520 U.S. at 463, 117 S.Ct. 1544, to plain error analysis.
 We adopted Neder's holding in Griego, declaring that "trial errors of constitutional magnitude are compatible with both harmless error and plain error analysis." 19 P.3d at 8. We made clear that if the defendant lodges no objection to the evidence or procedure, then we consider the error only under the plain error standard. Id. We emphasized, as the Supreme Court did in Neder, that this rule applies to both instructional omission and mis-descriptions of an element of an offense. Id. Accordingly, we "expressly disapprov[ed] of our contrary precedent on this issue." Id. Today, we clarify that constitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim for review by raising a contemporaneous objection. To the extent that some of our prior holdings state otherwise, we overrule those contrary statements.
 Plain error addresses error that is both "obvious and substantial." See People v. Stewart, 55 P.3d 107, 119 (Colo.2002); see also Olano, 507 U.S. at 733,113 S.Ct. 1770 (stating "`plain' is synonymous with `clear' or, equivalently, `obvious'"). We have recognized as plain error those errors that "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." People v. Sepulveda, 65 P.3d 1002, 1006 (Colo.2003); Garcia, 28 P.3d at 344; Bogdanov v. People, 941 P.2d 247, 255 (Colo.1997),disapproved on other grounds by Griego, 19 P.3d at 1.
 As applied to jury instructions, the defendant must "demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction." Garcia, 28 P.3d at 344. Specifically, the court's failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law. See Harlan, 8 P.3d at 472 (holding error not reversible where jury instructions as a whole kept prosecution to its proper burden of proof concerning the elements of first-degree murder); Garcia, 28 P.3d at 345 n. 3; People v. Manier, 184 Colo. 44, 53, 518 P.2d 811, 816 (1974). Moreover, an erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt. Bogdanov, 941 P.2d at 255; Espinoza v. People, 712 P.2d 476, 478 (Colo. 1985).
 III. ANALYSIS
 A. Voluntary and Involuntary Intoxication
 In this case, Miller defended on grounds of self-defense and involuntary intoxication— that he was "slipped a mickey." There is no dispute concerning the instructions addressing the involuntary intoxication. The evidence raised the question of voluntary intoxication, and the instructions on that issue are the subject of this opinion.
 For clarification, we begin our analysis by discussing the differences between the two defenses. In Colorado, involuntary intoxication is an affirmative defense to a criminal charge. A defense of involuntary intoxication presumes that "[a] person is not criminally responsible for his conduct if," because of involuntary intoxication, "he lacks capacity to conform his conduct to the requirements of the law." § 18-1-804(3). Affirmative defenses admit the doing of the act charged but seek to justify, excuse, or mitigate it. Huckleberry v. People, 768 P.2d 1235, 1238 (Colo.1989). Affirmative defenses, including involuntary intoxication, do not simply challenge the existence of an element of the offense, but seek to justify or mitigate the entire crime, and are therefore complete defenses. See Turner v. People, 680 P.2d 1290, 1292 (Colo.App.1983).
 To the contrary, voluntary or self-induced intoxication is not an affirmative defense, see Harlan, 8 P.3d at 470, but evidence of intoxication may "negative the existence of a specific intent if such intent is an element of the crime charged." § 18-1-803(1). First-degree murder (after deliberation) is a specific intent crime. A person commits the crime of murder in the first-degree if, "after deliberation and with the intent to cause the death of a person", he causes the death of that person. § 18-3-102(1).
 Accordingly, evidence of voluntary intoxication is admissible to counter the specific intent element of first-degree murder. "After deliberation" and "intent" are two distinct elements, which together constitute the specific intent mental state of first-degree murder. See Id.; § 18-3-102(1)(a), C.R.S. (2004). The statute defines the term "after deliberation" to mean "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act." § 18-3-101(3). Because the statute indicates that the mental state of "after deliberation" includes intent, the mental state for first-degree murder is distinguished by the requirement of "reflection and judgment." See Harlan, 8 P.3d at 474. Voluntary intoxication, therefore, bears upon both "after deliberation" and "intent". Id.
 B. The Instructional Error
 In Instruction 11, the trial court provided general definitions of "after deliberation" and "intent." In Instruction 12, the court set forth the elements of first-degree murder, as including both intent and after deliberation. In Instruction 31, the court charged the jury that:
You may consider evidence of self-induced intoxication in determining whether or not [s]elf-induced intoxication negates the existence of the culpable mental state of specific intent.
The prosecution has the burden of proving all the elements of the crimes charged. If you find the defendant was intoxicated to such a degree that he did not form the specific intent which is a required element of Murder in the First-degree After Deliberation and Theft you should find the defendant not guilty of those charges.
 The court did not instruct that "specific intent" includes both "intent" and "after deliberation." The court should have framed the instruction to clarify that if the jury found the defendant was intoxicated to such a degree that he did not form the intent or that he did not deliberate, both of which are required elements of Murder in the First-degree After Deliberation, the jury should find the defendant not guilty of that charge.
 That is the fundamental thrust of our holding on this point in Harlan. In Harlan, we found the error not to be reversible because, when looking at the instructions as a whole, the court did direct the jury to consider evidence of voluntary intoxication as it related both to intent and to deliberation.12
 In sum, when a voluntary intoxication instruction is warranted, the trial court should affirmatively instruct the jury that "after deliberation" is part of the culpable mental state required by first-degree murder and may be negated by evidence of voluntary intoxication.
 IV. APPLICATION OF PLAIN ERROR STANDARD
 When there is no objection to that instructional omission, the court will review the error under a plain error standard of review. Failure to instruct the jury properly does not constitute plain error where the subject of the error is not contested at trial, or where evidence of guilt is overwhelming. Bogdanov, 941 P.2d at 255. Such analysis demands that the court review the record in its entirety.
 Here, first, we note that the question of defendant's voluntary intoxication as it bore upon his intent and upon deliberation was not actually contested at trial. The defendant did not argue at trial that his voluntary intoxication should negate the specific intent required for first-degree murder. Rather, he argued that he was involuntarily intoxicated by the victim, who sexually assaulted and provoked him.
 Moreover, the record here presents overwhelming evidence of the defendant's guilt. The jury had before it evidence that, despite the defendant's claim of involuntary intoxication, he had sufficient presence of mind to conceal the murder weapon, a sixteen inch hatchet, from the victim; and that he had the ability to later locate the weapon after "waiting for the right moment" to use it. The evidence at trial indicated that the defendant had an opportunity to leave the victim's home, having exited the mobile home at one point, and he nonetheless returned. The jury also heard varying versions of the defendant's story from several witnesses who testified that the defendant did not claim that he was intoxicated or drugged during the murder.
 Miller even proffered expert testimony to support his defense of involuntary intoxication, to wit: his symptoms on the night of the murder, including dizziness and inability to maintain his balance supported the conclusion that the victim had drugged him. However, the defense expert conceded on cross-examination that the evidence was more consistent with drunkenness due to the consumption of alcohol and methamphetamines. The evidence supporting that conclusion was identified as: the fact that the defendant "blacked out" rather than "passed out"; the fact that he blacked out for only one hour rather than eight or twelve hours as is customary with Rohypnol; the fact that the defendant had a vivid memory of the morning of the murder; and the fact of the defendant's calculating behavior immediately following the murder. Even the conclusion that the defendant experienced symptoms of drunkenness upon consuming two alcoholic beverages was undermined by evidence that drinking alcohol after consuming a small amount of methamphetamine has the effect of canceling out the alcohol: that is, methamphetamine consumption causes a high, while alcohol causes a low.
 Furthermore, the defendant's claims of self-defense were contradicted by forensic evidence. Miller defended on grounds of self-defense, claiming that the victim sexually assaulted him and that the victim had been "scuffling" with him at the time of the murder. Forensic evidence demonstrated, however, that the victim was most likely in a stationery position when struck by the defendant, and therefore, could not have been "scuffling" with him. Also, the defendant's claims of forced oral sex were negated by DNA tests, in that there was no evidence of the defendant's DNA saliva on the victim.
 In addition, the defendant's behavior immediately following the murder was more demonstrative of calculation and design than of "delirious," "unconscious" action. After committing the murder, the defendant waited for the victim to take his last breath. Then, to evade detection, he used a flashlight to locate several of the victim's belongings, including the victim's vehicle and a significant amount of cash, with which he absconded.
 We conclude therefore that the instructional error did not rise to the level of plain error.
 V. CONCLUSION
 We hold that constitutional harmless error review applies only if the defendant preserves his claim for review by tendering a contemporaneous objection. Where, as in this case, the defendant fails to object at trial, plain error applies. Applying plain error to this case, we hold that the trial court's failure to instruct the jury properly that "after deliberation" is an element of first-degree murder that is negated by voluntary intoxication did not constitute plain error. We reverse and remand for proceedings consistent with this opinion.
 Justice BENDER specially concurs, and Justice MARTINEZ joins in the special concurrence.
 Justice BENDER, specially concurring.
 Because the majority concludes that the plain error standard of review applies to an unpreserved error of constitutional dimension, I write separately and concur in the judgment only. There are two types of constitutional error, namely: (1) structural error, requiring automatic reversal of a defendant's convictions regardless of whether the error at issue was objected to at trial; and (2) trial error. The error which is the subject of this appeal, i.e., an instructional error, is a trial error. There is conflicting authority from this Court on the proper standard of review to apply to a trial error of constitutional magnitude to which no objection is made at trial. In the past, we have applied either the plain error or the constitutional harmless error standard of review to such an error.
 The majority recognizes this conflict and concludes that the "current direction" from the United States Supreme Court requires us to review such errors only for plain error. Maj. op. at 748. However, in my view, the majority misreads the jurisprudence of the United States Supreme Court on this issue. Except in a limited class of cases subject to the Federal Rules of Criminal Procedure, the Supreme Court has consistently held that a higher standard of review is required for errors of constitutional dimension and has applied the constitutional harmless error standard of review to all trial errors, regardless of whether an objection to such errors was contemporaneously lodged at trial. Because we are bound to follow the precedent of the Supreme Court, and given the fundamental importance of constitutional rights in general, I believe it is our duty to carefully guard such rights and to thus review any constitutional trial errors under the highest standard of review available—that of constitutional harmless error.
 In applying the constitutional harmless error standard of review to the instructional error at issue here, I conclude that the error was harmless beyond a reasonable doubt and that the defendant's convictions therefore do not require reversal. Because the majority affirms the defendant's convictions, albeit under a different standard of review, I concur in its judgment only.
 Discussion
 A trial error which violates a criminal defendant's constitutional rights violates those rights which are most fundamental to the integrity of our judicial system. "The value of a Constitutional right cannot be overstated. In the words of Justice Jackson, Constitutional rights are `indispensable freedoms.'" James Edward Wicht III, There Is No Such Thing as a Harmless Constitutional Error: Returning to a Rule of Automatic Reversal, 12 BYU J. Pub.L. 73, 97 (1997) (quoting Brinegar v. United States, 338 U.S. 160, 180, 69 S.Ct. 1302, 1313, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting)). The United States Supreme Court has consistently recognized the importance of constitutional rights. For example, in Haynes v. Washington, the Supreme Court reversed the defendant's convictions where the trial court had erred by admitting the defendant's coerced confession. 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). In reversing the convictions, the Supreme Court stated, "[I]t is the deprivation of the protected rights themselves which is fundamental and the most regrettable, not only because of the effect on the individual defendant, but because of the effect on our system of law and justice." Id. at 519, 83 S.Ct. at 1346.
 Similarly, in O'Neal v. McAninch, the Supreme Court expressly acknowledged the value of guarding against errors of constitutional dimension, stating, "[A]n error of constitutional dimension ... [is one] that risks an unreliable trial outcome and the consequent conviction of an innocent person." 513 U.S. 432, 442, 115 S.Ct. 992, 997, 130 L.Ed.2d 947 (1995). Also, in Rose v. Clark, the Supreme Court explained that "[t]he thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments." 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). A violation of constitutional rights diminishes the value of the very rights upon which our country and legal system were built. See Wicht, supra, 12 BYU J. Pub.L. at 97; see also Harry T. Edwards, To Err Is Human, But Not Always Harmless: When Should Legal Error Be Tolerated?, 70 N.Y.U. L.Rev. 1167, 1194 (1995) ("Constitutional rights, in particular, often represent broad ideals of individual liberty and human dignity.").
 While expressly acknowledging the fundamental importance of a criminal defendant's constitutional rights, the Supreme Court has long recognized that a higher standard of review is required for constitutional errors. A brief review of the Supreme Court's jurisprudence on the appropriate standard of review for constitutional errors is instructive.
 Prior to the twentieth century, appellate courts often reversed trial court decisions for any type of error, including highly technical, purely benign, and trivial errors. Jeffrey O. Cooper, Searching for Harmlessness: Method and Madness in the Supreme Court's Harmless Constitutional Error Doctrine, 50 U. Kan. L.Rev. 309, 313-15 (2002) (citing Roger J. Traynor, The Riddle of Harmless Error, 3 (1970) ("There was a time in the law... when no error was lightly forgiven.")). To curb the injustices which were inherently resulting from such a reversal-oriented approach, Congress in 1919 enacted a statute requiring that appellate courts reverse only for errors or defects which affected the "substantial rights" of the parties, or, in other words, that they reverse only for errors which were deemed not harmless. See Cooper, supra, 50 U. Kan. L.Rev. at 314, 314 n. 27 (citing 28 U.S.C. § 2111 (2000) (present codification of the statute)13). Despite this legislation, the Supreme Court in Kotteakos v. United States expressed an unwillingness to depart from its automatic reversal approach when the error at issue was one of constitutional dimension: "If ... the [court] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm . . . ." 328 U.S. 750, 764-65, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (emphasis added) (footnote omitted).
 Although the Supreme Court in Kotteakos was unwilling to apply harmless error review to a constitutional error, the Court in Chapman v. California held that some constitutional errors may be deemed harmless. 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In so holding, however, the Court fashioned a heightened "harmless-constitutional-error rule," id. at 22, 87 S.Ct. at 827, holding that in order to affirm a defendant's convictions, a constitutional error must be deemed not just harmless but, rather, "harmless beyond a reasonable doubt." Id. at 24, 87 S.Ct. at 828. See Rose, 478 U.S. at 585, 106 S.Ct. at 3110 (Stevens, J., concurring) ("[T]he [Chapman] Court emphasized that the burden of showing that constitutional error is harmless is heavier than the burden of showing that ordinary trial error is harmless" (emphasis added).). According to the Chapman Court, an error is harmless if it is not reasonably possible that the error contributed to the defendant's conviction. 386 U.S. at 23-24, 87 S.Ct. at 827-28 (citing Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)).
 Following Chapman, the Supreme Court has either required automatic reversal of constitutional errors or has applied the constitutional harmless error doctrine to the review of such errors. While the Supreme Court has often applied the "harmless-constitutional-error rule," it has been divided in the proper application of that test. Instead of focusing on whether the error at issue contributed to the defendant's conviction, see Chapman, the Supreme Court has at times focused on whether the evidence against the defendant was overwhelming. See, e.g., Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). These two different methods of evaluating error under the constitutional harmless error rule have been referred to as the "effect-on-the-verdict" approach and the "guilt-based" approach, respectively. See Edwards, supra, 70 N.Y.U. L.Rev. at 1196, 1208. While these different approaches have been followed by the Supreme Court, certain members of the Court have consistently emphasized that Chapman's effect-on-the-verdict approach must be carefully adhered to because of the importance of the constitutional rights which may be infringed upon by any lesser standard of review. For example, in his dissent to Harrington, Justice Brennan, who was joined by two other justices, emphasized that Chapman required that the focus of review be on the effect of the error on the jury's verdict and noted both that "a conviction cannot constitutionally be based to any extent on constitutional error," 395 U.S. at 255, 89 S.Ct. at 1729 (emphasis added), and that a constitutional error is an error of a "most fundamental nature." Id. at 257, 89 S.Ct. at 1730.
 While the Supreme Court has been inconsistent in its application of the constitutional harmless error test—at times focusing on the overwhelming nature of the evidence and at other times determining the effect on the jury's verdict—it has consistently held that there are only two categories of review for errors of constitutional dimension, namely: (1) automatic reversal for structural errors; and (2) constitutional harmless error review for trial errors. See Arizona v. Fulminante, 499 U.S. 279, 306, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991) (noting that in Chapman, the Court "adopted the general rule that a constitutional error does not automatically require reversal of a conviction, [instead] the Court has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless"); Sullivan v. Louisiana, 508 U.S. 275, 282, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993) (Rehnquist, C.J., concurring) ("In Arizona v. Fulminante ... we divided the class of constitutional violations that may occur... into two categories: one consisting of `trial error[s],' . . . [which] are amenable to harmless error analysis; the other consisting of `structural defects,' . . . [which] require automatic reversal" (emphasis added).). Similarly, in Neder v. United States, the Court expressly noted that a "limited class of fundamental constitutional errors" require automatic reversal, but "[f]or all other constitutional errors, reviewing courts must ... `disregar[d]' errors that are harmless `beyond a reasonable doubt.'" 527 U.S. 1, 7,119 S.Ct. 1827, 1833,144 L.Ed.2d 35 (1999) (quoting Chapman) (emphasis added).
 While the majority holds that Neder and Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), together demonstrate the Supreme Court's preference to apply plain error review to errors for which no objection is made at trial, maj. op. at 749, in my view, these cases do not stand for such a holding. The Supreme Court in Neder did not address the issue of whether plain error or constitutional harmless error applies to a constitutional trial error for which no contemporaneous objection is made. Instead, the Court in Neder considered only the narrow issue of whether an omission of an element of an offense in a jury instruction constituted structural error, requiring automatic reversal, or constitutional trial error. The defendant in Neder objected to the error at trial, and the Supreme Court therefore did not consider what standard of review applies to an unpreserved constitutional error. 527 U.S. at 6-10, 119 S.Ct. at 1832-34. While the Neder Court cited Johnson v. United States, noting that Johnson had failed to object at trial and that the Court had therefore reviewed the error at issue for plain error, the Court cited Johnson only to support its holding that an omission of an element from jury consideration did not constitute structural error. Neder, 527 U.S. at 9, 119 S.Ct. at 1833-34. The Court in Neder thus focused solely on which of the two categories of constitutional error review, i.e., structural or constitutional harmless error, was appropriate for the elemental omission at issue.
 Although the Supreme Court in Johnson applied plain error review to an error similar to that at issue in Neder, but where no objection was made at trial, the Johnson Court expressly noted that it was applying plain error review because of the specific procedural nature of the case, which involved a "direct appeal[] from [a] judgment[] of conviction in the federal system" and was thus subject to Rule 52(b), the rule concerning plain error review, of the Federal Rules of Criminal Procedure. 520 U.S. at 466, 117 S.Ct. at 1548. The Supreme Court noted that it was not considering the constitutional nature of the error because Rule 52(b) governed the case: "[T]he seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure. None of the cases discussing `structural error,' . . . were direct appeals from judgments of conviction in the federal system. Several came from state courts which had considered the claimed error under their own rules. . . . None of them were subject to the provisions of Rule 52." Id. (emphasis added). The Supreme Court thus expressly limited its application of plain error review of such errors to cases subject to Rule 52(b) of the Federal Rules of Criminal Procedure. Where, as here, the error at issue is not a direct appeal from a judgment of conviction in the federal system, Johnson, by the Supreme Court's own admonition, cannot be considered instructive. See also United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (applying plain error review to unpreserved constitutional error but involving Rule 52(b) of Federal Rules of Criminal Procedure); United States v. Robinson, 485 U.S. 25, 36, 108 S.Ct. 864, 871, 99 L.Ed.2d 23 (1988) (Blackmun, J., concurring in part and dissenting in part) (in case involving federal prosecution, advocating plain error review for unpreserved constitutional error, but noting that "[a]ccounting for the constitutional magnitude of the error is, of course, appropriate").
 The majority claims that the Supreme Court in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), held that constitutional errors can be subject to plain error review. Maj. op. at 748-49. However, the Olano Court did not determine whether the error at issue was one of constitutional dimension in the first instance. Instead, the question in Olano concerned the interpretation of Rule 52(b), the rule concerning plain error review, of the Federal Rules of Criminal Procedure. In Olano, the trial court permitted two alternate jurors to observe, but not participate in, jury deliberations. The Supreme Court focused only on the nature of the error as being a violation of a procedural rule, specifically of Rule 24(c) of the Federal Rules of Criminal Procedure. 507 U.S. at 737-41,113 S.Ct. at 1779-81. It is not evident from the Supreme Court's opinion whether it would consider a violation of a rule of criminal procedure to be a constitutional error. However, even if it were to consider the error to be of constitutional dimension, the Supreme Court did not reach this issue in Olano but, instead, limited its analysis to the interpretation of Rule 52(b). See also Johnson, 520 U.S. at 466,117 S.Ct. at 1548 (similarly limiting holding). Based on the narrow nature of its holding, Olano is, in my view, not instructive on the issue we confront today.14
 In sum, except for the limited class of cases subject to the federal rules, the Supreme Court has applied only automatic reversal or constitutional harmless error review to unpreserved errors of constitutional magnitude. In tracking the Supreme Court's review of constitutional errors, it is evident that the Court was at first unwilling to apply even constitutional harmless error review to an error of constitutional dimension and instead showed a preference to require automatic reversal for all such errors. While the Court has since applied constitutional harmless error review to certain constitutional errors, it has consistently recognized the fundamental importance of constitutional rights and has not overruled Chapman, the case in which it established the heightened harmless error test for review of errors of constitutional dimension.
 The majority holds that plain error review is applicable to a constitutional error not objected to at trial. Maj. op. at 749. However, the Supreme Court has not applied plain error review to a constitutional error involving an appeal from a judgment of conviction in state court. In my view, the majority's application of plain error review diminishes the constitutional importance of the error at issue because it applies the same standard of review as that which it applies to an ordinary trial error not objected to at trial. In contrast to the heightened standard of harmless error review followed by the Supreme Court since Chapman, the majority's application of plain error review fails to place any significance on the constitutional nature of the error at issue. The majority's holding today is thus inconsistent with the Supreme Court's treatment of constitutional errors.15 A plain error standard of review is a significantly lower standard of review, see Auman v. People, 109 P.3d 647, 665 (Colo. 2005) (a finding of plain error necessarily implies a finding of constitutional harmless error), and is not one of the "two" categories of review which the Supreme Court has consistently applied to constitutional errors. While the Supreme Court has not specifically addressed what standard of review should apply to an appeal of an unpreserved constitutional trial error from a state court criminal trial, its precedent shows no indication that it would diminish the value of constitutional rights by subjecting unpreserved claims of constitutional error to plain error review. See Wicht, supra, 12 BYU J. Pub.L. 73 (advocating return to automatic reversal of all constitutional errors and abandonment of constitutional harmless error doctrine) (citing cases). I therefore disagree with the majority's holding that plain error review is applicable to the defendant's claimed error and would instead hold that such error should be reviewed under the constitutional harmless error standard of review, a holding which is consistent with our line of cases applying such review to unpreserved trial errors of constitutional dimension. See People v. Harlan, 8 P.3d 448, 490 (Colo.2000); People v. Davis, 794 P.2d 159, 189 (Colo. 1990); People v. Rodgers, 756 P.2d 980, 984 (Colo.1988).
 However, while I would apply the constitutional harmless error standard of review to the instructional error at issue here, I do not reach a different result than that reached by the majority. For the reasons stated by the majority, i.e., the overwhelming nature of the evidence against the defendant and the curative effect of the instructions when read as a whole, I conclude that the error here was harmless beyond a reasonable doubt. Accordingly, I agree with the majority, albeit under a different standard of review, that the defendant's convictions should be affirmed.
 Conclusion
 For the reasons stated, I specially concur only with the judgment reached by the majority.
 I am authorized to state that JUSTICE MARTINEZ joins in this special concurrence.
 1. Justice MARTINEZ and Justice BENDER would grant the Petition.
 2. The defendant presented several issues on cross-petition, none of which we accepted for review.
 3. The People postured the two issues as follows:
 1. Whether the court of appeals erred when it held that it was plain error for the trial court not to specifically instruct the jury that it could consider evidence of defendant's voluntary, self-induced intoxication to negate the "after deliberation" element of first-degree murder.
 2. In the alternative, even if defendant's conviction for first-degree murder was properly reversed, whether the court of appeals erred when it declined to specifically instruct the trial court that defendant could, after remand, be sentenced upon his felony murder conviction, which previously was merged with his first-degree murder conviction.
 4. § 18-3-102(1)(a), C.R.S. (2000).
 5. § 18-3-102(1)(b), C.R.S. (2000).
 6. Miller revealed that the victim customarily walked around in the nude and "always had weapons lying around." The victim was also accustomed to making crude sexual remarks and reading pornographic magazines, an activity Miller participated in on the night of the murder. Defense counsel revealed in opening statement that Miller and the victim had previously lived together. Other witnesses testified that the victim was a hunter and also kept guns because of his line of business: "loan shark."
 7. Miller presented expert testimony at trial that his symptoms were consistent with ingested Rohypnol, a "date rape" drug. However, on cross-examination, the expert conceded that the evidence in this case was more consistent with a conclusion that the defendant was drunk from alcohol consumption following methamphetamine ingestion.
 8. The trial court sustained the defendant's objection to the pathologist's opinion that the victim was asleep when struck because the information was not included in the doctor's report. But he was permitted to testify that given the nature of the victim's wounds (identical angles, indicating rapid strikes) he could not have been "scuffling" with the defendant at the moment he was struck.
 9. In that case, the record indicated that the defendant had objected to inflammatory closing remarks by the prosecutor. See Chapman, 386 U.S. at 35, 87 S.Ct. 824, Appendix to the Opinion of the Court.
 10. The Court cited the following examples of structural errors: Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)(denial of public trial); Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction).
 11. In Neder, the defendant was charge with fraud. In Johnson, the defendant was charged with perjury. "Materiality" is an element of both offenses.
 12. In contrast, in Sepulveda, we found reversible error where the trial court affirmatively misinstructed the jury that "the defendant's self-induced intoxication is not a defense to `after deliberation'." See 65 P.3d at 1005-6 (emphasis added).
 13. Section 2111 provides: "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111 (2000).
 14. Similarly, while the majority cites People v. Garcia, 28 P.3d 340 (Colo.2001), Walker v. People, 932 P.2d 303 (Colo.1997), and People v. Rubanowitz, 688 P.2d 231 (Colo.1984) as cases holding that "plain error controls our review of unpreserved constitutional claims," maj. op. at 748, we did not expressly recognize that the errors at issue in these cases were errors of constitutional magnitude. Instead, we applied plain error review because the errors at issue, constitutional or otherwise, had not been objected to at trial.
 15. The lack of emphasis which the majority places on the special importance of constitutional rights is also inconsistent with the standard of review applied by the Tenth Circuit Court of Appeals to trial errors of constitutional magnitude not objected to at trial. The Tenth Circuit has expressly recognized that while plain error review is applicable to an unpreserved trial error, the court applies such review "less rigidly when reviewing a potential constitutional error." United States v. Ambort, 405 F.3d 1109, 1118 (10th Cir.2005) (quoting United States v. James, 257 F.3d 1173, 1182 (10th Cir.2001)). While I disagree with the Tenth Circuit's application of plain error review to constitutional errors, I note that the Tenth Circuit, unlike the majority today, at least requires a somewhat higher standard of review for an error of constitutional dimension.