The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Sheldon ELIE, Defendant–Appellant.

No. 04CA0940.

Colorado Court of Appeals, Div. IV.

Sept. 7, 2006.

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Dean Neuwirth, P.C., Dean S. Neuwirth, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Sheldon Elie, appeals the judgments of conviction entered upon jury verdicts finding him guilty of attempted first degree murder, a class two felony; first degree assault, a class three felony; and two counts of felony menacing, both class five felonies. Defendant also appeals his aggravated range sentence for one of the felony menacing convictions. We affirm the judgments of conviction, but remand for resentencing on the felony menacing conviction.

Victims Bellamy and Church, residents of Colorado Springs, arrived unannounced at defendant's Denver home, seeking to purchase marijuana. Defendant, who did not know the victims, told them to return an hour later. When they did so, they encountered defendant, an individual named JJ, and an unidentified third man, all of whom emerged from a back room of the house armed with handguns. The victims attempted to persuade the men that they were friends, but one of the three men abruptly shot Church in the ankle.

Defendant and JJ then forced the victims into the backseat of Church's car, telling them that they would show them to the highway to return home. Instead, they drove into an alley, ordered the victims out of the car, and after a brief exchange of words, began shooting at them. Church suffered four gunshot wounds and died from his injuries. Bellamy suffered two gunshot wounds, but escaped and survived.

Defendant was charged with first degree murder of Church, attempted first degree murder of Bellamy, and first degree assault of Bellamy. His defense was that JJ had been the shooter.

Defendant requested the trial court to instruct the jury on the lesser nonincluded offense of felony menacing. The jury convicted defendant of attempted first degree murder of Bellamy, first degree assault of Bellamy, and felony menacing of both victims, but found him not guilty of the first degree murder of Church.

The trial court sentenced defendant to forty–two years in the custody of the Department of Corrections for attempted murder, ten years for assault, and three years for felony menacing of Bellamy, to run concurrently, and six years for felony menacing of Church, to run consecutively. This appeal followed.

## I.

■ Defendant asserts the trial court erred in admitting, as a prior consistent statement, a videotaped statement given by Bellamy, without viewing it beforehand. He also asserts the court should have admitted only those portions of the videotape that were consistent with Bellamy's direct examination testimony. We disagree.

■ A trial court has substantial discretion in deciding questions concerning the admissibility of evidence. Absent an abuse of this discretion, a trial court's evidentiary rulings will be affirmed. *People v. Quintana,* 882 P.2d 1366 (Colo.1994); *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

■ A prior consistent statement is admissible nonhearsay evidence if the declarant testifies at trial and is subject to cross–examination concerning the statement, and the statement is offered to rebut an express or implied charge of recent fabrication or improper influence or motive. CRE 801(d)(1)(B). A prior consistent statement is also admissible for rehabilitation after a witness has been impeached by a prior inconsistent statement. *People v. Eppens,* 979 P.2d 14 (Colo.1999); *People v. Andrews,* 729 P.2d 997 (Colo.App.1986).

■ The determination of how much of a prior consistent statement is admissible is based upon its relevance and probative use. *People v. Halstead,* 881 P.2d 401 (Colo.App.

1994). If the impeachment goes only to specific facts, then only prior consistent statements regarding those specific facts are relevant and admissible. *People v. DelGuidice,* 199 Colo. 41, 606 P.2d 840 (1979), *disapproved of on other grounds by People v. Harlan,* 8 P.3d 448 (Colo.2000). However, if the impeachment is general and not limited to specific facts, then the jury should have access to all the relevant facts, including consistent and inconsistent statements. *People v. Tyler,* 745 P.2d 257 (Colo.App.1987).

In *People v. Halstead, supra,* the division distinguished *People v. DelGuidice, supra,* where the impeachment upon cross–examination related to one specific statement, and concluded that the victim's statement was admissible because the cross–examination included over thirty references to the victim's statements to police, covered nearly every aspect of the crime, and thus was admissible in its entirety because the impeachment was a general attack on the victim's credibility.

Similarly, in *People v. Eppens, supra,* the defendant discredited the victim's trial testimony by highlighting several discrepancies between it and a prior statement she had given to police. On redirect, the prosecution sought to demonstrate that, with the exception of the few details highlighted on cross–examination, the victim's trial testimony was consistent with her prior statement. The court concluded that because the defendant had attempted generally to discredit the victim's trial testimony, the entirety of her prior statement was admissible to rehabilitate her.

## A.

Here, at the start of cross–examination, defendant suggested that Bellamy had an improper motive to testify because the prosecution had promised to write a favorable letter to his parole officer. Defendant also implied Bellamy was a "professional witness" because he had testified in a number of other cases. Defendant's cross–examination of Bellamy then focused on three of his prior statements.

Bellamy had given a statement shortly after the shooting, while he was being treated for his injuries. Many details of that state-

ment conflicted with his testimony on direct examination, and defendant impeached him extensively with the inconsistencies.

Bellamy had also given a second statement several days after the shooting in which he identified JJ from a photo lineup as the person who shot him. On direct examination, however, he testified that defendant had shot him. Defendant impeached Bellamy with this prior inconsistent statement as well.

Bellamy had given yet a third statement in a videotaped interview with a detective three months after the shooting, in which he clarified his account of the crime and explained that he could not get his "story straight" in the first statement because he was scared and upset from the shooting. He admitted on cross–examination at trial that he had said in the videotape interview that he had not been able to get his story straight in the first statement.

On redirect, the prosecution proffered the videotape as a prior consistent statement and to place the admission about Bellamy's inability to "get his story straight" in context. Defendant objected that it was unnecessary to show the videotape because Bellamy had agreed he could not get his story straight. The prosecution responded that such a characterization was incorrect, because defendant had pointed out numerous discrepancies between Bellamy's prior statements and his trial testimony, and the videotape was consistent with his trial testimony. The trial court ruled that the videotape was admissible as a prior consistent statement and allowed the entire interview to be played for the jury.

The next day, defendant moved for a mistrial, arguing that showing the videotape was tantamount to the wholesale introduction of hearsay. The trial court denied the motion and clarified its earlier ruling. The court stated that the cross–examination of Bellamy was a "blanket approach," in that defendant had called into question essentially every aspect of his trial testimony by the use of prior inconsistent statements. Therefore, it was proper for the jury to consider all the statements Bellamy had given in order to compare and contrast the differences among them. We agree with the trial court's determination.

Defendant cross-examined Bellamy on almost every aspect of his account of the crime, including how many men were at the house; who was arguing with whom; why he left the house the first time; who got in the car when he was forced into the backseat; who drove the car; who made the statement, "kill that fool," in the alley; who started shooting; where he was standing in relation to defendant and JJ when they started shooting; who shot him; and who he had identified in the photo lineup. Defendant also cross examined regarding Bellamy's motive for testifying and further implied that he was a "professional witness." Thus, the impeachment was not limited to specific facts but was instead a general attack on his credibility.

Accordingly, we find no error in the admission of the entire videotape.

### B.

■ Defendant nevertheless contends that a prior consistent statement cannot be used, as here, to prove new points that were not covered in the witness's direct testimony. *See* Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 405, at 18182 (2d ed.2004) (the use of a prior consistent statement is not intended to enable a party to prove important details lying beyond that testimony merely because they are consistent with its general tenor); *Lancaster v. State,* 43 P.3d 80, 89 (Wyo.2002)("[M]aterial information presented for the first time to support a prior 'consistent statement' has no antecedent with which to be consistent or inconsistent and is, therefore, inadmissible."). Specifically, defendant contends the videotape included new matters that were not consistent with any prior statement: (1) that defendant called a friend who was supposedly familiar with the victims, but who was unable to explain why the victims would appear uninvited at defendant's house; (2) that defendant told JJ to shoot Bellamy as he started to run away in the alley; and (3) that defendant shot at Bellamy when JJ would not, and kept shooting until his gun ran out of bullets. We find no reversible error.

Defendant did not object at trial that there was new material in the videotape or that the

trial court had failed to review the tape before admitting it. When, as here, no contemporaneous objection is made, appellate review is limited to determining whether there is plain error. Crim. P. 52(b); *People v. Miller*, 113 P.3d 743 (Colo.2005); *People v. Willcoxon*, 80 P.3d 817 (Colo.App.2002).

■ Plain error is error that is obvious and substantial. It exists when, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Miller, supra; Moore v. People,* 925 P.2d 264 (Colo.1996); *People v. Villarreal,* 131 P.3d 1119 (Colo.App.2005).

Here, even if we assume, without deciding, that the trial court's failure to view the videotape before showing it to the jury was error, *see Lancaster v. State, supra* (trial court erred in showing videotaped statement to jury without first viewing it and identifying those portions admissible as a prior consistent statement), and that the material was new, we cannot conclude that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of defendant's conviction.

The jury heard numerous conflicting accounts of the crime from Bellamy, including his three prior statements and his testimony on direct and cross–examination. Each account related details that the others did not, and each was in parts consistent and inconsistent with the others. The prosecution did not highlight or distinguish the three details defendant now alleges prejudiced him. And it is highly unlikely that the jury parsed them out on its own, because the videotape was shown only once and those details do not stand out in the videotaped interview.

Hence, we find no plain error.

## II.

■ Defendant asserts the trial court erred in instructing the jury on complicity liability. Specifically, he asserts that the instruction failed to inform the jury that, to be convicted as a complicitor, he must have had the same mental state that the substantive crime requires of the principal. We disagree.

■ Because defendant did not object at trial to the jury instruction, we review for plain error. *See* Crim. P. 52(b); *People v. Miller, supra.* As applied to jury instructions, plain error review requires that the defendant must demonstrate not only that the error is obvious and affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction. Specifically, the court's failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law. *People v. Miller, supra.*

■ In *Bogdanov v. People,* 941 P.2d 247 (Colo.), *amended,* 955 P.2d 997 (Colo.1997), *disapproved of on other grounds by Griego v. People,* 19 P.3d 1 (Colo.2001), the supreme court clarified that complicity liability requires a dual mental state. The complicitor must have the culpable mental state required for the underlying crime committed by the principal, and the complicitor must assist or encourage the commission of the crime committed by the principal with the intent to promote or facilitate such commission. The court modified the pattern complicity instruction, CJI–Crim. 6:04 (1983), to mirror more properly the complicity liability statute, § 18–1–603, C.R.S.2005, by adding the element that the defendant must have had the intent to promote or facilitate the commission of the crime, so that the instruction should now state:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed

2. Another person must have committed all or part of the crime

3. The defendant must have had knowledge that the other person intended to commit all or part of the crime

4. The defendant must have had the intent to promote or facilitate the commission of the crime

5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

*Bogdanov v. People, supra,* 941 P.2d at 254 n. 10.

The *Bogdanov* court also concluded that when a defendant charged with a crime under a complicity theory did not actually commit any of the essential elements of the crime, it is error to include the "all or part of" language in the instruction. However, the court noted that the "all or part of" language would be proper in a case where two or more persons together commit a crime, but neither one committed all the elements of the crime.

Here, the trial court gave the reformulated instruction approved in *Bogdanov.* However, defendant contends the instruction was flawed because it failed to inform the jury that, if it did not decide who shot Bellamy, then it must decide that both defendant and JJ possessed the mental states required by the substantive crimes. We do not agree.

■ First, defendant was not charged with attempted first degree murder and first degree assault of Bellamy on the theory that he did not commit any of the essential elements of those crimes. Moreover, under a complicity theory, it is not necessary that any single person commit all the elements of the underlying offense. It is only necessary that the acts of the complicitor and the other actor or actors, together, constitute all acts necessary to complete the underlying offense. *People v. Fisher,* 904 P.2d 1326 (Colo. App.1994), *vacated on other grounds and remanded to* 926 P.2d 170 (Colo.App.1996); *People v. Mershon,* 844 P.2d 1240 (Colo.App. 1992), *aff'd in part and rev'd in part on other grounds,* 874 P.2d 1025 (Colo.1994).

In addition, the prosecution presented evidence upon which the jury could conclude that defendant either shot Bellamy or was complicit in JJ's shooting of him. Thus, the jury was not required to decide whether defendant or JJ shot Bellamy. The "all or part of" language in the complicity instruction was included specifically to address this issue. *See Bogdanov v. People, supra.*

Second, to the extent defendant contends *Bogdanov* was wrongly decided, we lack authority to overrule it. In addition, defendant fails to identify a set of circumstances in which a person could intend that his actions promote or facilitate a crime but lack the requisite mental state for that crime, and he certainly has not identified such circumstances here.

Hence, we find no error, let alone plain error.

## III.

■ Defendant asserts his six–year sentence for felony menacing of Church is unconstitutional under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because the trial court imposed an aggravated range sentence based on its finding that it was defendant who shot Church in the ankle. We agree that resentencing is required.

■ Appellate review of constitutional challenges to sentencing determinations is de novo. *Lopez v. People,* 113 P.3d 713 (Colo. 2005); *People v. Matheny,* 46 P.3d 453 (Colo. 2002).

Felony menacing with a deadly weapon is a class five felony, § 18–3–206, C.R.S.2005, which carries a presumptive range sentence of one to three years. Section 181.3401(1)(a)(V)(A), C.R.S.2005. However, if the court finds that extraordinary aggravating circumstances are present, it may impose a sentence of up to twice the maximum term authorized in the presumptive range. Section 181.3401(6), C.R.S.2005.

■ "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington, supra,* 542 U.S. at 301, 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000)).

▪ Consistent with principles expressed in *Apprendi* and *Blakely,* a trial court may rely on the following types of facts in imposing an aggravated range sentence under § 181.3401(6): facts admitted by the defendant; facts found by the jury; facts found by the court after the defendant stipulates to judicial fact finding; and the fact of a prior conviction. *DeHerrera v. People,* 122 P.3d 992 (Colo.2005); *Lopez v. People, supra.* If the trial court relies on any one of these permissible facts, the aggravated range sentence is constitutional, even if the court also considered facts that did not fall into one of the four categories. *Lopez v. People, supra; People v. Martinez,* 128 P.3d 291 (Colo.App. 2005).

The People contend that defendant failed to preserve this issue because he did not raise it at sentencing; hence, they urge us to apply plain error review. We agree. Plain error review applies to an unpreserved *Apprendi* error. *See People v. Medina,* 140 P.3d 64 (Colo.App.2005)*(cert. granted* Aug. 14, 2006); *see also People v. Miller, supra.*

Here, at sentencing, the trial court proceeded to describe the events of the crime at length, ultimately concluding that defendant's conduct was "extremely aggravated" and that "what is important is what happened that day."

The court then imposed a sentence for each conviction, citing specific aggravating and mitigating circumstances for each. For felony menacing of Church, the court stated:

> As related to the menacing in relation to Church, the court finds aggravation. The court finds that Church, because of the actions of [defendant] in shooting him in the ankle, was basically rendered defenseless, unable to defend himself in any fashion, unable to run, and certainly lacked resources of Bellamy in trying to get away from whoever was firing at him. The sentence as relates to the menacing—excuse me, as relates to Church, is six years, and is consecutive to the sentence ... as it relates to Bellamy.

The record thus reveals that the trial court imposed an aggravated range sentence for felony menacing of Church based on its own finding that defendant was the one who shot

him in the ankle. However, defendant did not admit that he shot Church in the ankle, and the jury did not find such a fact.

Accordingly, the error is obvious. *See United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (indictment's failure to allege a fact, drug quantity, that increased the statutory maximum sentence rendered enhanced sentences erroneous under the reasoning of *Apprendi;* such error was plain because although the law at the time of trial was settled and clearly contrary to the law at the time of appeal, it is enough that an error is plain at the time of appellate consideration).

▪ The error also affected defendant's substantial rights. For an error to have affected substantial rights "in most cases ... means that the error must have been prejudicial: It must have affected the outcome of the ... proceedings." *United States v. Lott,* 310 F.3d 1231, 1242 (10th Cir.2002) (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993)); *see United States v. Cotton, supra.*

Here, the court's reliance upon its factual determination affected the sentence it imposed. The People nevertheless invite us to infer that, because the trial court noted defendant's prior convictions, it necessarily considered them to be an extraordinary aggravating circumstance. *See People v. Hamling,* 634 P.2d 1023, 1025 (Colo.App. 1981)("Where, as here, the trial court imposes a sentence beyond the presumptive range, and in so doing enters specific and detailed written findings as to the circumstances the court finds to support such an extended sentence, it is self-evident that the court regards such circumstances as extraordinary in nature."). We decline the invitation.

The record does not support the inference that the trial court relied on the fact of defendant's prior convictions in imposing an aggravated range sentence for his conviction for felony menacing of Church. The trial court did not impose an aggravated range sentence on the conviction for felony menacing of Bellamy, which it logically would have done if it were relying upon prior convictions. Instead, the record reveals that the trial

court imposed an aggravated range sentence for felony menacing of Church based solely on its own finding that defendant was the one who shot him in the ankle.

We also conclude that the error so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the result. *See People v. Miller, supra.* Thus, the trial court's imposition of an aggravated range sentence is reversible error.

Accordingly, the aggravated range sentence for felony menacing of Church cannot stand. Therefore, we reverse that sentence.

■ Concerning the appropriate remedy, generally the proper procedure for an appellate court to follow upon finding *Blakely* error is to remand the case to the trial court for resentencing. *See People v. Isaacks,* 133 P.3d 1190 (Colo.2006). Defendant requests that we require the court to resentence him in the presumptive range. However, having remedied the unconstitutional sentence by vacating it, we see no impediment to the trial court's discretionarily aggravating defendant's sentence on remand if it determines to do so based upon his prior convictions. A prior conviction is a *Blakely* exempt factor upon which a trial court may rely in aggravating a sentence, and if a *Blakely* exempt factor exists to support a sentence, it does not matter that the court also considers other factors that are not *Blakely* compliant. *See Lopez v. People, supra.*

*People v. Isaacks, supra,* is not to the contrary. There, the court remanded for resentencing within the presumptive range following its finding of *Blakely* error. However, in that case, there were apparently no prior convictions. *See People v. Watts,* —— P.3d ——, 2006 WL 2291166 (Colo.App. No. 04CA0731, Aug. 10, 2006)(inferring that *Isaacks* did not involve prior convictions). Thus, *Isaacks* considered facts that were assertedly *Blakely* compliant, whereas here, if the trial court chooses to aggravate the sentence on remand because of defendant's prior convictions, it will be relying upon a *Blakely* exempt factor. We do not read *Isaacks* to apply to *Blakely* exempt prior convictions. *See People v. Blessett,* —— P.3d ——, 2006

WL 1028888 (Colo.App. No. 04CA0434, Apr. 21, 2006).

The judgments of conviction are affirmed, the sentence for felony menacing of Church is reversed, and the case is remanded for resentencing on that conviction.

Judge CARPARELLI and Judge J. JONES concur.