The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Jorge MARQUEZ–LOPEZ,** Defendant–Appellant.

No. 95CA1684.

Colorado Court of Appeals, Div. V.

July 24, 1997.

Rehearing Denied Sept. 18, 1997.

Certiorari Denied Feb. 23, 1998.

A deputy sheriff was dispatched to the scene as backup for the fire department paramedics. The paramedics arrived first and waited for the deputy. After the deputy arrived, he spoke with the paramedics, and then approached the entrance to defendant's mobile home.

Upon viewing the interior, he noticed that objects appeared to be out of their appropriate place, such as a picture on the floor. He also observed defendant inside the structure and that defendant appeared to be agitated and perspiring. The deputy was then told by the neighbor who had called 911 that defendant did not want him there and that he was fine. However, according to the deputy, the neighbor also stated that defendant had a "mental problem."

Upon observing the deputy, defendant also stated that he did not want the deputy there. Nevertheless, the deputy remained on the porch observing defendant.

After approximately 30 seconds, defendant walked or ran from the mobile home. The deputy followed. The deputy asked defendant to stop, but defendant did not comply. The deputy then grabbed defendant by the arm, at which time an altercation broke out.

Once the deputy gained control, defendant was handcuffed with the assistance of the fire department personnel. After a few minutes, the deputy believed defendant had calmed down and he was assisted to his feet. Defendant then kicked the officer in the knee. Defendant was arrested and was placed on the ground again, at which point he twisted two of the deputy's fingers. His legs were restrained. Ultimately, the deputy took defendant to the county detention center.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Lynne Delisi Oliva, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Julie Iskenderian, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, Jorge Marquez–Lopez, appeals from the judgment entered upon a jury verdict finding him guilty of second degree assault upon a peace officer. We reverse and remand for a new trial.

The record reflects that defendant suffered an epileptic seizure in his mobile home. ' His mother asked a neighbor to call an ambulance. The neighbor called 911 and stated that defendant was having an "attack of the nerves" and that "he could hurt himself." The dispatch record of the 911 call also indicated that: "[Informant] doesn't think he is suicidal."

I

Defendant first contends that the conviction for second degree assault under § 18–3–203(1)(f), C.R.S. (1996 Cum.Supp.) must be reversed because he was not "lawfully confined or in custody" pursuant to the statute when he kicked the officer in the knee and twisted his fingers. Specifically, defendant argues that because he was neither confined in an institution nor placed under arrest for a

crime prior to the assault, the statute does not apply. We disagree.

■ Section 18–3–203(1)(f) provides that a person commits second degree assault if:

> While lawfully confined or in custody, he violently applies physical force against the person of a peace officer....

Because the statute includes the phrase "lawfully confined *or* in custody," it is not necessary that defendant be incarcerated at the time of the assault. Instead, the statute may be violated if the defendant is in the lawful custody of a peace officer at the time of the assault. *People v. Armstrong,* 720 P.2d 165 (Colo.1986).

In addition, in *People v. Ortega,* 899 P.2d 236, 238 (Colo.App.1994), a division of this court concluded that no formal arrest was required to establish custody under the statute, stating:

> [W]hen, as here, an officer has detained a suspect for purposes of further investigation rather than arrest, but nevertheless has applied a sufficient level of physical control so as reasonably to ensure that the suspect does not leave, then the suspect is in custody for purposes of § 18–3–203(1)(f).

*See also People v. Thornton,* 929 P.2d 729 (Colo.1996) (determining meaning of "custody" for purposes of the escape statute).

Nevertheless, defendant contends that *Ortega* does not apply because the defendant in that case was being detained in connection with the investigation of an assault and here no such investigation was underway. However, in our view, the statute is not limited to situations in which the investigation of a crime is involved. Instead, we conclude that if the officer has a person in custody for any lawful reason, the statute applies.

## II

As the basis for securing custody of defendant, the prosecution relied upon § 27–10–105, C.R.S. (1989 Repl.Vol. 11B), which provides:

> (1)(a) When any person appears to be mentally ill and, as a result of such mental illness, appears to be an imminent danger to others or to himself or appears to be gravely disabled, a peace officer ... upon *probable cause* ... may take the person into custody....

(emphasis supplied)

The trial court instructed the jury as follows:

> A peace officer may lawfully temporarily detain any individual for a field investigation where the following conditions are met:
>
> (1) The officer must have *reasonable suspicion* that the individual appears to be an imminent danger to others or himself; appears to be gravely disabled; or is committing, has committed, or is about to commit a crime. The officer need not have sufficient evidence to justify an arrest or a commitment to a facility.
>
> (2) The purpose of the detention must be reasonable.
>
> (3) The character of the detention must be reasonable when considered in light of the purpose.

(emphasis supplied)

### A

We agree with defendant's contention that this instruction was incorrect because it did not include the element of probable cause contained in the statute.

■ As stated in § 27–10–105, in order to invoke the emergency procedure for taking a person into custody, it must appear that probable cause exists for concluding that defendant was a danger to himself, to others, or that he was gravely disabled. *See People v. Chavez,* 629 P.2d 1040 (Colo.1981). And, the requirements of the statute must be strictly followed. *People in Interest of Lloyd–Pellman,* 844 P.2d 1309 (Colo.App. 1992). Indeed, the probable cause requirements are the basis upon which the statute withstands a constitutional challenge based upon an individual's right to due process. *See Curnow v. Yarbrough,* 676 P.2d 1177 (Colo.1984).

In our view, "probable cause" requires that the officer have more than the "reasonable suspicion" referenced in the instruction. *See People v. Cappelli,* 927 P.2d 832

(Colo.1996)(under the Fourth Amendment, "reasonable suspicion" is required for an investigatory stop; "probable cause" is required to arrest); *People v. Altman,* 940 P.2d 1009 (Colo.App.1996)(reasonable suspicion that defendant is involved in criminal activity is not sufficient to establish probable cause for issuance of search warrant). Instead, the prosecution must establish that there are reasonable grounds to believe that a person is a danger to himself or herself, to others, or is gravely disabled. *See People v. George,* 914 P.2d 367 (Colo.1996)("reasonable suspicion" is a less demanding standard than probable cause); *People v. Nanes,* 174 Colo. 294, 483 P.2d 958 (1971)("reasonable grounds" and "probable cause" are substantially equivalent).

As a result, we conclude that the instruction was defective. We further conclude that since the instruction given did not require the prosecution to establish that the custody was premised on probable cause, the error mandates reversal.

### B

■ We also agree with defendant that a relevant definition of "gravely disabled" should be included in the instruction on retrial if the prosecution relies upon this provision of the statute as the basis for the deputy having taken custody of defendant.

"Gravely disabled" is expressly defined in § 27–10–102(5)(a), C.R.S. (1989 Repl.Vol. 11B) as a condition in which a person, as a result of mental illness:

(I) Is in danger of serious physical harm due to his inability or failure to provide himself the essential human needs of food, clothing, shelter, and medical care; or

(II) Lacks judgment in the management of his resources and in the conduct of his social relations to the extent that his health or safety is significantly endangered and lacks the capacity to understand that this is so.

Here, no evidence was offered tending to indicate that defendant was unable to secure food, clothing, and shelter, or that he lacked judgment in the management of his resources. At best, the record suggests that he might have rejected appropriate medical care. Under these circumstances, we conclude that a relevant definition should be included based upon the evidence presented.

### III

■ One other issue that may arise on retrial concerns defendant's contention that the trial court erred in failing to provide a theory of the defense instruction which, as tendered, recited that defendant did not knowingly assault the police officer. We find no reversible error.

■ Defendant is entitled to a theory of defense instruction if the record contains any evidence to support the defendant's theory. *People v. Nunez,* 841 P.2d 261 (Colo.1992). And, this type of instruction has been given as a theory of the defense instruction in various cases. *See People v. Morgan,* 637 P.2d 338 (Colo.1981); *People v. Ellsworth,* 679 P.2d 112 (Colo.App.1983). However, the requirement that the prosecution establish the element of "knowingly" was covered in other instructions to the jury on the elements of the charged crime. *See People v. Tippett,* 733 P.2d 1183 (Colo.1987). Under these circumstances, there was no reversible error in refusing the tendered instruction. *See People v. Hoehl,* 629 P.2d 1083 (Colo.App.1980).

By reason of our disposition of the foregoing issue, it is unnecessary to address defendant's remaining contentions.

The judgment is reversed and the cause is remanded for a new trial consistent with the views expressed in this opinion.

ERICKSON,* J., concurs.

QUINN,* J., concurs in part and dissents in part.

Justice QUINN concurring in part and dissenting in part.

I concur in Part I of the majority opinion and in the majority's remand for a new trial

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1996 Cum.Supp.)

for reasons stated in Part II. I dissent, however, from Part III of the majority opinion, which holds that the trial court did not err in refusing to instruct the jury on the defendant's theory of defense.

The crime of assault in the second degree against a peace officer requires that the person committing the offense "knows or reasonably should know that the victim is a peace officer ... engaged in the performance of his duties." Section 18–3–203(1)(f), C.R.S. (1996 Cum.Supp.).

Here, there was evidence that the defendant, shortly before his physical confrontation with the deputy sheriff, had suffered a severe epileptic seizure in his home. The defendant had been foaming at the mouth and was convulsing. The paramedic who responded to the emergency call testified that a seizure is like a "chaotic firing of electricity" into the brain and that during the period immediately following a seizure the patient often is uncooperative, belligerent, and confused. Hence, there was ample evidence to support the defendant's theory that he did not have the requisite culpable mental state during his physical confrontation with the deputy sheriff—that is, he did not know nor should he have reasonably known that he was assaulting a peace officer engaged in the performance of his duties.

The defendant tendered a theory of defense instruction that stated, in substance, that his conduct was the involuntary result of the epileptic seizure and its aftermath. The trial court rejected the tendered instruction apparently because the court believed that it was merely a restatement of the culpability elements of assault in the second degree upon a peace officer.

Although the trial court was not obliged to accept the defendant's tendered instruction, it was incumbent on the court to work with defense counsel in fashioning a proper theory-of-the-case instruction. The court's instruction on the statutory definition of "knowingly" and the essential elements of the crime of second degree assault on a peace officer was not an adequate substitute for the defendant's theory of defense. Those instructions did not adequately advise the jury of the significance of the epileptic seizure on the defendant's criminal responsibility. Further explanation was required in this case.

In *People v. Nunez*, 841 P.2d 261 (Colo. 1992), our supreme court affirmed the reversal of an aggravated robbery and crime of violence conviction because of the trial court's failure to prepare a proper theory-of-the-case instruction on the defendant's theory of alibi. The supreme court stated:

In Colorado, an instruction embodying a defendant's theory of the case *must be given* by the trial court if the record contains *any evidence to support the theory*.... The rationale underlying the general rule is the belief that it is for the jury and not the court to determine the truth of the defendant's theory.... As a result, a criminal defendant is entitled to an instruction embodying his theory of the case even if the only supporting evidence is highly improbable testimony by the defendant....

. . . .

Jury instructions that merely set forth the elements of the offense and the burden of proof, without more, do not encompass a theory of defense. A trial court has an affirmative obligation to cooperate with counsel to either correct an alibi theory of the case instruction or to incorporate the substance of such an instruction in one drafted by the court.

*People v. Nunez, supra,* 841 P.2d at 264–66 (emphasis in original).

*Nunez* is controlling in the case before us. The trial court had the responsibility to fashion an instruction which essentially told the jury that it is the defendant's contention that he suffered an epileptic seizure shortly before his physical confrontation with the deputy sheriff; that due to the seizure and its aftereffects, the defendant did not know nor should he have reasonably known that the deputy sheriff was a peace officer engaged in the performance of his duties; and that if the jury so finds or otherwise has a reasonable doubt regarding the defendant's culpable mental state at the time of his physical confrontation with the deputy sheriff, the jury

should find the defendant not guilty. The failure of the trial court to submit an appropriate theory of defense to the jury constitutes reversible error and requires a new trial.