The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 9, 2018

## 2018COA115

**No. 16CA0875 People v. Joosten — Criminal Law — Jury
Instructions — Theory of the Case**

This case addresses when a trial court may properly deny a
defendant's theory of the case instruction and when the wrongful
denial of such an instruction requires reversal.

The division declines to follow *People v. Marquez-Lopez*, 952
P.2d 788, 791 (Colo. App. 1997), and *People v. T.R.*, 860 P.2d 559,
561 (Colo. App. 1993) to the extent they conclude that elemental
instructions can substitute for a defendant's proposed theory of the
case instruction. Those holdings conflict with the supreme court's
decision in *People v. Nunez*, 841 P.2d 261, 264-65 (Colo. 1992).

Notwithstanding the trial court's refusal to give a theory of the
case instruction, the division affirms the defendant's second degree
burglary conviction and directs the correction of the mittimus.

COLORADO COURT OF APPEALS                                    2018COA115

Court of Appeals No. 16CA0875
Adams County District Court No. 13CR3365
Honorable Thomas R. Ensor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Leonard Joosten,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE BERGER
Hawthorne and Miller*, JJ., concur

Announced August 9, 2018

Cynthia H. Coffman, Attorney General, Lisa K. Michaels, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Karen Mahlman Gerash,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

## I. Introduction and Summary

¶ 1     This case requires us to address when a trial court may properly deny a defendant's theory of the case instruction, and when the wrongful denial of such an instruction requires reversal.

¶ 2     A jury convicted Leonard Joosten of second degree burglary, first degree criminal trespass, one count of third degree assault, and two counts of class 3 misdemeanor criminal mischief. Joosten appeals only the burglary conviction.

¶ 3     The trial court denied Joosten's tendered theory of the case instruction regarding the burglary charge, reasoning that the tendered instruction was nothing more than a denial of the elements of the charged crime. In view of that conclusion, the trial court did not work with defense counsel to craft an acceptable theory of the case instruction.

¶ 4     The supreme court has repeatedly and unambiguously held that a criminal defendant is entitled to a theory of the case instruction. *See, e.g., People v. Roman*, 2017 CO 70, ¶ 15; *People v. Nunez*, 841 P.2d 261, 264-65 (Colo. 1992). None of the exceptions to that rule were applicable in this case. *Nunez*, 841 P.2d at 264-65. Accordingly, the trial court erred when it refused Joosten's

tendered instruction, or alternatively, when it failed to work with Joosten's counsel to craft a permissible instruction. Nevertheless, because the error was harmless, we affirm the second degree burglary conviction.

¶ 5    Joosten also claims that the mittimus is incorrect as to the criminal mischief charges. We agree and direct that the mittimus be corrected to reflect that Joosten was convicted of class 3 misdemeanor criminal mischief, not class 2 misdemeanor criminal mischief.

II.    Relevant Facts and Procedural History

¶ 6    The prosecution's evidence permitted the jury to find the following facts. Joosten and his girlfriend lived together and were in an intimate relationship for many years. When the relationship deteriorated, Joosten's girlfriend found a roommate. Joosten moved out of the apartment, but continued to "frequently" spend the night there. He also continued to keep at least some of his belongings at the apartment.

¶ 7    One morning, the roommate heard a knock on the door. As she looked through the door's peephole, Joosten kicked down the door and the door hit her in the face. Joosten entered the

2

apartment and went into his girlfriend's bedroom. They argued and the roommate heard a "thud" followed by the girlfriend yelling for the roommate to call the police. Joosten told the roommate he would beat her if she called the police.

¶ 8    The roommate answered a phone call from her boyfriend, and Joosten left his girlfriend's room to attempt to grab the roommate's phone. During this confrontation, Joosten's girlfriend fled the apartment and the roommate's boyfriend called the police.

¶ 9    Joosten went back into his girlfriend's room, where he cut up her driver's license and bank card and cut the cords of her hair dryer and curling iron.

¶ 10    The police arrived shortly thereafter and arrested him.

¶ 11    The prosecution charged Joosten with second degree burglary, two counts of third degree assault (one involving his girlfriend and one involving the roommate), and two counts of criminal mischief.

¶ 12    Joosten's principal defenses to the burglary charge were that he had a possessory interest in the apartment and that his girlfriend invited him there. Supporting the invitation defense, the roommate testified that the day before the events at issue, Joosten's girlfriend had offered to wash Joosten's work clothes and suggested

that he pick them up the next morning; but the roommate also testified that she was not sure whether the girlfriend later revoked this invitation. The girlfriend testified that she did not remember extending this invitation to Joosten.

¶ 13    The jury acquitted Joosten of the third degree assault charge involving the roommate, but convicted him of all the other counts and of first degree criminal trespass.[1]  On appeal, he challenges only his conviction for second degree burglary and the alleged error in the mittimus relating to the criminal mischief charges.

### III.    There Was Sufficient Evidence to Convict Joosten of Second Degree Burglary

¶ 14    We first address Joosten's contention that the evidence was insufficient to convict him of second degree burglary, because if he

---

[1] On the second day of the trial, over Joosten's objection, the court granted the prosecution's motion requesting a jury instruction on first degree criminal trespass as a lesser nonincluded offense of second degree burglary.  At sentencing, the court merged the second degree burglary and first degree criminal trespass convictions.  Because Joosten did not address the propriety of the court instructing the jury on a lesser nonincluded offense over his objection, we do not address this question. *See People v. Skinner*, 825 P.2d 1045, 1047 (Colo. App. 1991) ("[A] lesser non-included offense instruction may be given only if the defendant requests it or consents to it."); *see* Crim. P. 7(e).

is correct, further prosecution may be prohibited by constitutional prohibitions against double jeopardy. *People v. Marciano*, 2014 COA 92M-2, ¶ 42.

¶ 15     Joosten contends that the prosecution failed to prove beyond a reasonable doubt that he (1) relinquished his possessory interest in the apartment; (2) knew his invitation to enter the apartment was revoked; and (3) knew his entry was unlawful.

¶ 16     "The due process clauses of the United States and Colorado Constitutions prohibit the criminal conviction of any person except on proof of guilt beyond a reasonable doubt." *Kogan v. People*, 756 P.2d 945, 950 (Colo. 1988), *abrogated on other grounds by Erickson v. People*, 951 P.2d 919 (Colo. 1998). A reviewing court faced with a sufficiency challenge must determine whether the evidence, when viewed as a whole and in a light most favorable to the prosecution, is both substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the charge beyond a reasonable doubt. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).

¶ 17     In determining whether the evidence is sufficient to sustain a conviction, we "must give the prosecution the benefit of every

reasonable inference that might fairly be drawn from the evidence." *People v. Duncan*, 109 P.3d 1044, 1045-46 (Colo. App. 2004). Moreover, "the resolution of inconsistent testimony and determination of the credibility of the witnesses are solely within the province of the jury." *Id.* at 1046.

¶ 18    To support a burglary conviction, a jury must find beyond a reasonable doubt that the defendant "knowingly [broke] an entrance into, enter[ed] unlawfully in, or remain[ed] unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." § 18-4-203(1), C.R.S. 2017.  "A person 'enters unlawfully' or 'remains unlawfully' in or upon premises when the person is not licensed, invited, or otherwise privileged to do so." § 18-4-201(3), C.R.S. 2017.  "In determining whether the crime of burglary has been committed, the focus is upon the possessory rights of the parties[.]" *People v. Hollenbeck*, 944 P.2d 537, 538 (Colo. App. 1996).

¶ 19    Joosten argues that because he previously lived at the apartment, still frequently stayed there, and had left some of his

possessions there, he maintained a possessory interest in the premises, precluding a conviction for burglary.

¶ 20    More specifically, relying on *Hollenbeck*, 944 P.2d at 539, Joosten argues that he had a possessory interest in the apartment because there was no evidence that he and his girlfriend had agreed to live separately and that he understood he had relinquished his possessory interest. *Hollenbeck* does not support Joosten's position.

¶ 21    In *Hollenbeck,* a division of this court recognized that an estranged spouse who had previously shared a residence with the victim could be convicted of burglarizing the former marital residence if the victim was in exclusive possession of the residence at the time of the alleged burglary. *Id.* The division held that, absent a restraining order or an order granting one party exclusive possession of the marital residence, whether one spouse had the sole possessory interest "depends on whether the evidence shows that both parties had decided to live separately." *Id.*

¶ 22    The *Hollenbeck* division concluded that there was sufficient evidence that the defendant had relinquished his possessory interest because (1) he had left the marital residence and taken

7

most of his belongings; and (2) his wife had changed the locks, filed for divorce, and told him he was no longer welcome in the residence.  *Id.* at 539-40.

¶ 23    Contrary to Joosten's argument, *Hollenbeck* supports our conclusion that sufficient evidence supported his burglary conviction.  Although Joosten continued to stay at the apartment "frequently," like the defendant in *Hollenbeck*, he had taken many of his personal belongings out of the apartment.  *Id.* at 539.  The evidence established that Joosten always knocked before entering the apartment because he did not have keys to the apartment.[2]  In any event, it is undisputed that Joosten gained entry on this occasion by kicking down the door.  "This method of entry is inconsistent with any kind of permissive entry."  *People v. Johnson*, 906 P.2d 122, 126 (Colo. 1995).  A reasonable juror could easily infer that Joosten knew he did not have a possessory interest in the apartment when he forcibly entered it.

_____

[2] The roommate testified that Joosten did not have a key to the apartment and always knocked before he entered.  The girlfriend testified that she had changed the locks to the apartment but did not remember whether Joosten had keys for the new locks.  Joosten did not testify.

¶ 24    Joosten also separately argues that, even if there was sufficient evidence to prove that he did not have a possessory interest in the apartment, the evidence demonstrated that his girlfriend had consented to his entry because she had invited him to pick up his laundry from the apartment.

¶ 25    But the girlfriend testified that she did not remember extending this invitation to Joosten.  Whether or not there was such an invitation was for the jury to determine.  "[T]he resolution of inconsistent testimony and determination of the credibility of the witnesses are solely within the province of the jury." *Duncan*, 109 P.3d at 1046.

¶ 26    Lastly, Joosten argues that the evidence was insufficient to show he acted knowingly.  This element requires evidence that Joosten "subjectively knew that [his] entry into the [apartment] was unlawful." *Oram v. People*, 255 P.3d 1032, 1038 (Colo. 2011).  "An actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence." *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009).  As noted above, a reasonable juror could infer that Joosten knew he did not have permission to enter the

apartment when he forcibly entered the premises. *See Johnson,* 906 P.2d at 126.

¶ 27    Accordingly, the evidence was sufficient to sustain Joosten's second degree burglary conviction.

IV.    Criminal Defendants Have the Right to a Theory of the Case Instruction

A.    General Principles

¶ 28    In *Nunez,* 841 P.2d at 264-65, the Colorado Supreme Court held that defendants have the right to a theory of the case instruction. A theory of the case instruction tendered by a defendant *must* be given if the record contains any evidence to support the theory. *Id.* at 264. "The rationale underlying [this right] is the belief that it is for the jury and not the court to determine the truth of the defendant's theory." *Id.* at 264-65. A trial court has no discretion to refuse a tendered, properly worded theory of the case instruction if it is supported by any evidence. *Id.*

¶ 29    There are two exceptions to this rule. A defendant has no right to a theory of the case instruction that misstates the applicable law, unduly emphasizes specific facts, or is argumentative. *People v. Smith,* 77 P.3d 751, 756 (Colo. App.

2003). And a theory of the case instruction may properly be refused when other instructions adequately convey the defendant's theory of the case. *Nunez*, 841 P.2d at 265.

¶ 30    When a defendant is entitled to a theory of the case instruction but the instruction tendered is defective in some manner, the trial court has an affirmative duty to work with defense counsel to craft an acceptable instruction. *Id.*

B.    Joosten Was Entitled to a Theory of the Case Instruction

¶ 31    Joosten tendered the following theory of the case instruction:

> Leonard Joosten contends that he is not guilty of Second Degree Burglary because he entered the apartment under the belief that he was invited in and had a privilege to be at the apartment. He went to an apartment where he stayed at, kept several belongings, and possessed a key to allow him to come and go. Entry into the apartment under these circumstances is not unlawful.
>
> Mr. Joosten went to the apartment to get his clothes so that he could go to work, as he had previously agreed to do with [his girlfriend].
>
> If you find that Mr. Joosten entered the apartment under the mistaken belief that he was invited or privileged and/or that he lacked the intent to commit the crimes of Assault in the Third Degree and Criminal Mischief when he entered, you must find Mr. Joosten not guilty of Second Degree Burglary.

11

¶ 32    The trial court rejected the instruction on the basis that it "simply denied one of the elements of the crime." And, presumably because of that ruling, the court did not work with Joosten's defense counsel to craft an acceptable instruction.[3]

¶ 33    We reject the trial court's reasoning that the tendered instruction merely denied the elements of the crime. To the contrary, we view the tendered instruction as Joosten's coherent theory of why he did not commit the crimes charged because he was invited in or had the privilege to enter the apartment. Joosten's theory of the case was that he either had consent to enter the premises or that he had been invited to do so. The tendered instruction explains the circumstances underlying Joosten's theory of the case. This goes well beyond a simple denial of the elements

---

[3] Because we conclude that the failure to give the tendered theory of the case instruction could not have, under the facts presented, impaired Joosten's right to a fair trial, we do not address whether a defendant must, in addition to tendering or requesting a theory of the case instruction, also specifically request the trial court to work with him to craft an acceptable theory of the case instruction. Or, whether absent such a request an appellate court reviews only for plain error.

of the burglary charge. The elemental instructions did not address the *reasons* why Joosten claimed that he was not guilty of burglary.

¶ 34    The Attorney General contends that the court's rejection of Joosten's theory of the case instruction was either proper or harmless because the instruction was "embodied in other instructions given by the court." *People v. Tippett,* 733 P.2d 1183, 1195 (Colo. 1987); *see also People v. Cardenas,* 25 P.3d 1258, 1265 (Colo. App. 2000). This argument founders on the fact that the only instruction given by the court on second degree burglary was the elemental pattern instruction. "Jury instructions that merely set forth the elements of the offense and the burden of proof, without more, do not encompass a theory of defense." *Nunez,* 841 P.2d at 266. Thus, Joosten's theory of the case instruction was not "embodied in other instructions given by the court." *Tippett,* 733 P.2d at 1195.

¶ 35    To the extent *People v. Marquez-Lopez,* 952 P.2d 788, 791 (Colo. App. 1997), and *People in Interest of T.R.,* 860 P.2d 559, 561 (Colo. App. 1993), hold otherwise and conclude that elemental instructions that do no more than describe the elements of the offense can substitute for a defendant's proposed theory of the case

13

instruction, we decline to follow them because they conflict with the supreme court's holding in *Nunez*, 841 P.2d at 264-65. *People v. Buell*, 2017 COA 148, ¶ 17 (a division of the court of appeals is not bound by the decisions of other divisions) (*cert. granted* Apr. 23, 2018).

¶ 36    While Joosten was entitled to a theory of the case instruction, whether the instruction tendered by him was proper in form is a closer question. However, given the uncontroverted evidence regarding the manner of Joosten's entry into the apartment, it is unnecessary for us to determine whether the tendered instruction was unacceptable. Moreover, even if the tendered instruction was unacceptable, so long as it, at least in principle, set forth a valid theory of the case instruction, the trial court had a duty to work with counsel to craft an acceptable instruction. *See Nunez*, 841 P.2d at 265.

¶ 37    The Attorney General also claims that theory of the case instructions are unnecessary (or the failure to give such an instruction is harmless) so long as the defendant is permitted to argue the facts and circumstances that underlie the defendant's theory of the case. We reject this argument because it is

14

inconsistent with *Nunez, id.,* which confers a broad right on criminal defendants.

¶ 38　　Although courts may "consider whether defense counsel's closing argument fairly represented defendant's theory to the jury," *People v. Dore,* 997 P.2d 1214, 1222 (Colo. App. 1999), "arguments of counsel cannot substitute for instructions by the court," *Taylor v. Kentucky,* 436 U.S. 478, 488-89 (1978). *See Qwest Servs. Corp. v. Blood,* 252 P.3d 1071, 1088 (Colo. 2011) (holding that courts presume a jury follows a trial court's instructions, but a jury may properly disregard statements made by counsel). Unless and until the supreme court overrules or modifies *Nunez,* both this court and the trial courts must apply *Nunez* as written. *Willhite v. Rodriguez-Cera,* 2012 CO 29, ¶ 9.

## C.　Reversal is Not Required

¶ 39　　While the trial court abused its discretion either in refusing the tendered instruction or, if the form of the instruction was defective, in failing to work with Joosten's defense counsel to craft a proper theory of the case instruction, that does not end our analysis. In *People v. Novotny,* a case decided after *Nunez,* the supreme court instructed us that "reversal of a criminal conviction

15

for other than structural error, in the absence of express legislative mandate or an appropriate case specific, outcome-determinative analysis, can no longer be sustained." 2014 CO 18, ¶ 27.

¶ 40 A court's improper rejection of a theory of the case instruction is harmless if it does not adversely affect the defendant's substantial rights. *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001). Put differently, we must ask whether there is a reasonable probability that the jury would have found Joosten guilty of second degree burglary had the error not occurred. *Salcedo v. People*, 999 P.2d 833, 841 (Colo. 2000).

¶ 41 While we reject the Attorney General's reasons why the trial court's refusal of the tendered instruction (or a reworked instruction) was harmless, we also must address the quantum and quality of evidence that negated the theory of defense presented in Joosten's tendered instruction. If the evidence was such that no reasonable juror would have credited the defense asserted in the instruction, Joosten was not harmed by the court's refusal to give the instruction or to work with his counsel to craft an acceptable instruction. *See People v. Klausner*, 74 P.3d 421, 424 (Colo. App. 2003). While we have not found any Colorado case law applying

*Novotny*'s outcome-determinative test specifically to the rejection of a theory of the case instruction, we perceive no reason that such an error is exempt from *Novotny*'s holding. ¶ 27.

¶ 42    The tendered theory of the case instruction addressed whether Joosten knowingly entered the apartment unlawfully, one of the elements of the crime of burglary. The evidence was undisputed that Joosten gained entry to the apartment by kicking down the door. If he had a key to the premises, he did not use it and, regardless of whether he was previously invited to pick up his laundry, no person present in the apartment opened the door for him to give him access. Instead, he used a violent act to gain entry.

¶ 43    This evidence persuades us that no reasonable juror would have credited the defenses that he entered the apartment under the mistaken belief that he was invited or privileged to do so and that he lacked the necessary criminal intent to be convicted of second degree burglary. As a result, the error did not substantially influence the verdict or the fairness of the trial proceedings and was harmless.

## V. The Court Erred in Sentencing Joosten on Two Counts of Class 2 Misdemeanor Criminal Mischief

¶ 44 Finally, we address Joosten's contention that the mittimus incorrectly reflects that the jury convicted him of two counts of class 2 misdemeanor criminal mischief. The Attorney General concedes error and we agree.

¶ 45 Although, Joosten did not raise this argument at trial, "[c]lerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time." Crim. P. 36.

¶ 46 Joosten was charged with two counts of class 2 misdemeanor criminal mischief, but at the jury instruction conference, the court stated that "if, in fact, the jury finds the defendant guilty of Criminal Mischief, it would be the lowest class of Criminal Mischief, which would be the class-three misdemeanor." Thus, the mittimus incorrectly reflects that Joosten was convicted of two counts of class 2, rather than class 3, misdemeanor criminal mischief. The mittimus must be corrected accordingly.

## VI.    Conclusion

¶ 47    The judgment of conviction is affirmed.  The case is remanded for the correction of the mittimus.

JUDGE HAWTHORNE and JUDGE MILLER concur.