22CA0107 Peo v Acevedo 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA0107 Araphoe County District Court No. 21CR81 Honorable Kenneth M. Plotz, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Daniel Acevedo, Defendant-Appellant. JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE SULLIVAN Fox and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
1 ¶ 1 Defendant, Daniel Acevedo, appeals the judgment of conviction entered on jury verdicts finding him guilty of retaliation against a judge and menacing with a deadly weapon. We affirm the judgment of conviction, reverse the sentence, and remand with directions. I. Background ¶ 2 The jury heard evidence from which it could reasonably find the following facts. ¶ 3 In 2019, Judge Anne M. Ollada oversaw two of Acevedo’s criminal cases. She accepted plea agreements that Acevedo agreed to in both. In 2021, Acevedo called Judge Ollada’s chambers, where her clerk answered the telephone. Acevedo, unprompted, introduced himself as “Daniel Ortega” and stated that he would come to the courthouse and kill Judge Ollada and blow up the courthouse. ¶ 4 The clerk contacted the Arapahoe County Sheriff’s office and provided a statement to one of the deputies. Out of caution, the deputies evacuated the courthouse. Before initiating the evacuation, the deputy called the number that Acevedo had used and asked for “Daniel Ortega.” Acevedo responded, “Fuck you — you’re trying to get me to stay on the line. Fuck your bitch ass 
2 Judge Anne Marie Ollada. Fuck that bitch, she knows who I am,” and then hung up. After staff evacuated the building, law enforcement commenced a K-9 sweep of the courthouse and provided additional security to Judge Ollada. Law enforcement located no threats after sweeping the courthouse premises. ¶ 5 Sergeant Bruce Peterson began investigating the threatening telephone call the same day. He prepared a warrant requesting a GPS location of the telephone number Acevedo used to call the courthouse. Initially, Peterson couldn’t obtain GPS information for the cell phone because it had been turned off. While waiting for a ping, however, Peterson and other law enforcement officers researched a police database for names associated with the telephone number that Acevedo had called from and discovered a high level of association between the number and a “Daniel Acevedo.”
1 The database also contained a picture of Acevedo, which Peterson reviewed. ¶ 6 A few days later, Peterson received a ping that the cell phone had been turned on near East Colfax and South I-225. Peterson 1 A “ping” refers to the location information a cell phone provider gives to law enforcement in real time when a phone is active. 
3 and two other officers headed to that location the same day to investigate. When they arrived, the officers noticed an encampment nearby. Upon entering the encampment, Peterson observed a person walking toward them while wielding a hatchet. As the person got closer, Peterson recognized, based on the photograph he had reviewed, that it appeared to be Acevedo. Acevedo began to shout about Judge Ollada, saying that the officers were Judge Ollada’s hit crew and had come to ruin his and his family’s life. The officers drew their weapons to make Acevedo drop the hatchet, brought him to the ground, and placed him in handcuffs. ¶ 7 During the struggle, a cell phone fell out of Acevedo’s pocket. One of the investigators used her cell phone to dial the number used to call the courthouse; the cell phone that fell out of Acevedo’s pocket began to ring and displayed the investigator’s number on its screen. ¶ 8 When the officers transported Acevedo to their patrol cars, Acevedo identified himself as “Daniel Acevedo.” He then confirmed that he called the courthouse, but stated that he meant that he would drop an “information bomb” by revealing that Judge Ollada intended to “nuke” the United States as part of a terrorist group. 
4 ¶ 9 At trial, Judge Ollada testified that she isn’t involved with nuclear weapons, nor has she ever been. The jury found Acevedo guilty of retaliation against a judge and menacing with a deadly weapon. The court sentenced Acevedo to a concurrent prison term of two years for retaliation against a judge and one year for menacing. ¶ 10 Acevedo now appeals. He contends that the district court erred by (1) omitting the mens rea requirement from the retaliation jury instruction; (2) declining to give a supplemental jury instruction defining the phrase “as retaliation or retribution against a judge”; and (3) considering Acevedo’s silence as a lack of remorse when imposing its sentence. We disagree with Acevedo’s first two contentions but agree with the third. II. Mens Rea Jury Instruction ¶ 11 Acevedo first seeks plain error review of the district court’s jury instruction identifying the elements of retaliation against a judge, arguing that the instruction failed to properly explain that the mental state of “knowingly” applied to the act of making a credible threat against Judge Ollada. We perceive no plain error. 
5 A. Standard of Review ¶ 12 We review unpreserved challenges to jury instructions for plain error. People v. Garcia, 28 P.3d 340, 344 (Colo. 2001). Plain error is error that is both obvious and substantial. Hagos v. People, 2012 CO 63, ¶ 14. An error is obvious if it contravenes (1) a statute; (2) a well-settled legal principle; or (3) Colorado case law. People v. Pollard, 2013 COA 31M, ¶ 40. An error is substantial if it so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. Hoggard v. People, 2020 CO 54, ¶ 13. With respect to jury instruction challenges, the defendant must show not only that the erroneous instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction. Id.; People v. Miller, 113 P.3d 743, 750 (Colo. 2005). ¶ 13 While the trial court enjoys “substantial discretion in formulating the jury instructions,” People v. Gallegos, 226 P.3d 1112, 1115 (Colo. App. 2009), we review de novo whether a particular jury instruction correctly states the law, People v. Maloy, 2020 COA 71, ¶ 54. 
6 B. Analysis 1. The Instructional Error Was Obvious ¶ 14 As relevant here, an individual commits retaliation against a judge if the individual knowingly makes a credible threat against a judge who has served in a legal matter involving the individual. See § 18-8-615(1)(a)-(b), C.R.S. 2023. To constitute retaliation, the threat must be made directly to the judge, or to another person if (1) the individual making the threat intended that it be relayed to the judge or (2) the other person is required by statute or ethical rule to report the threat to the judge. § 18-8-615(1)(b). ¶ 15 Here, the district court instructed the jury on the elements of retaliation against a judge but omitted the “knowingly” mens rea requirement. The instruction identified the elements as follows: (1) That Mr. Acevedo, (2) in the State of Colorado, at or about the date and place charged, (3) made a credible threat directly to a judge, or to another person if the defendant intended that the communication would be relayed to the judge, or to a person whom the defendant knew was required by statute or ethical rule to report the communication to the judge; or committed an act constituting the crime of harassment, or an act of harm or injury upon 
7 a person or property, which action was directed against or committed upon the judge, a member of the judge’s family, a person in close relationship to the judge, or a person residing in the same household with the judge, (4) as retaliation or retribution against a judge who was serving in a legal matter assigned to the judge that involved Mr. Acevedo. ¶ 16 In People v. Berry, 292 P.3d 954, 958 (Colo. App. 2011), a division of this court, interpreting section 18-8-615, concluded that the “General Assembly did not intend to limit the application of the mens rea of ‘knowingly’ to any particular element.” Because “knowingly” was absent from the court’s instruction, and because Berry is directly on point, we conclude that the instruction’s deviation from the statute constitutes an obvious error. See People v. Walker, 2022 COA 15, ¶ 59 (an obvious error is one that “contravene[s] . . . Colorado case law”); see also § 18-1-503(4), C.R.S. 2023 (“When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.”). 
8 ¶ 17 We disagree with the People’s arguments to the contrary. First, the “intended” mental state in the court’s instruction doesn’t subsume the “knowingly” mental state. Section 18-8-615(1)(b) states that an individual commits retaliation against a judge by knowingly making a credible threat, while section 18-8-
615(1)(b)(II)(A) provides that the threat can be made to “another person” besides the judge, but only if the individual making the threat intends for the other person to relay the threat to the judge. These mental states apply to separate acts, with “knowingly” applying to the act of making the credible threat and “intended” applying to relaying the threat to the judge. ¶ 18 Next, although the district court’s instruction generally tracks the pattern jury instruction for retaliation against a judge, see COLJI-Crim. 8-6:16 (2023), the error is still obvious. A pattern instruction isn’t “a safe harbor that insulates instructional error from reversal.” Garcia v. People, 2019 CO 64, ¶ 22. Pattern instructions are simply a guide, and it remains the duty of the trial court to instruct the jury accurately on all matters of law. People v. Mattas, 645 P.2d 254, 257 (Colo. 1982). 
9 ¶ 19 Having concluded the error was obvious, we next turn to the substantiality prong of the plain error analysis. 2. The Instructional Error Wasn’t Substantial ¶ 20 A court’s failure to instruct the jury properly doesn’t constitute plain error if the subject of the error isn’t contested at trial. Miller, 113 P.3d at 751; Auman v. People, 109 P.3d 647, 665 (Colo. 2005). ¶ 21 In Hoggard, ¶ 19, our supreme court addressed an argument similar to Acevedo’s — that a jury instruction improperly explained the required mens rea for the charged crime. The court concluded that any error in the instruction didn’t prejudice the defendant since her theory of defense centered on identity rather than intent. Id. ¶ 22 Acevedo’s theory of the defense at trial was that he made the call to Judge Ollada based on his “delusions” about her as a person, not out of retaliation for her actions as a judicial officer. After the first sentence of defense counsel’s opening statement — “[d]elusions are not retaliations” — the prosecution objected because Acevedo hadn’t pleaded insanity or provided notice of a defective mental health condition. At the bench conference that followed, defense counsel clarified that Acevedo wasn’t “running an insanity defense,” 
10 but rather intended to argue that Acevedo’s delusional beliefs about Judge Ollada that motivated his call — including that “she’s a member of a secret government organization, [and] that she has plans on her desk to detonate a nuclear bo[mb]” — were unrelated “to her service as a judicial officer.” ¶ 23 The prosecution countered by stating that, if defense counsel meant to suggest that Acevedo “was incapable of forming the proper mens rea,” then his defense is “by definition” a “plea of insanity.” Defense counsel responded, “That’s not at all what I’ve just said, Judge.” The district court ruled in Acevedo’s favor, agreeing that his theory of defense didn’t “go[] to mental health” but instead “to whether or not the statements made were in retaliation or retribution against Judge Ollada.” ¶ 24 In closing argument, defense counsel again emphasized that Acevedo’s call to Judge Ollada had “[n]othing to do with [her] being a judge” and “absolutely nothing to do” with her judicial role in his criminal cases. Defense counsel argued that Acevedo had committed only the lesser offense of harassment because he placed the call based on his delusions regarding Judge Ollada as a person, disconnected from her judicial role. 
11 ¶ 25 On this record, we conclude that this case is like Hoggard because Acevedo’s mens rea wasn’t contested. Acevedo’s theory of defense didn’t depend on his failure to form the requisite mens rea of “knowingly.” Indeed, had that been Acevedo’s defense, he wouldn’t have conceded during closing that he committed harassment. See § 18-9-111(1), C.R.S. 2023 (harassment requires that the defendant act “with intent to harass, annoy, or alarm another person”) (emphasis added); People v. Founds, 631 P.2d 1166, 1168 (Colo. App. 1981) (“[I]ntentional conduct represents a higher degree of culpability than the culpable mental state of ‘knowing’ conduct.”). Instead, Acevedo’s theory of defense was that he didn’t retaliate against Judge Ollada based on her position as a judge. ¶ 26 Accordingly, no reasonable possibility exists that the district court’s omission of “knowingly” from the retaliation instruction contributed to Acevedo’s conviction. III. Supplemental Jury Instruction ¶ 27 Acevedo next argues that the district court reversibly erred by rejecting his requested supplemental jury instruction regarding the meaning of “retaliation or retribution against a judge.” We disagree. 
12 A. Standard of Review ¶ 28 We review a district court’s decision to give or not give a jury instruction for an abuse of discretion. People v. Dinapoli, 2015 COA 9, ¶ 9. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. People v. Cox, 2023 COA 1, ¶ 38. ¶ 29 The parties agree Acevedo preserved this issue, requiring that we review this alleged instructional error for nonconstitutional harmless error. See People v. Koper, 2018 COA 137, ¶ 9. B. Applicable Law ¶ 30 The district court shoulders the responsibility to instruct the jury correctly on the law. People v. Stewart, 55 P.3d 107, 120 (Colo. 2002). As long as the court’s instructions properly inform the jury of the law, the court enjoys broad discretion to determine the form and style of the jury instructions. McDonald v. People, 2021 CO 64, ¶ 54. When “determining the propriety of a particular jury instruction the instructions should be viewed as a whole.” People v. Riley, 708 P.2d 1359, 1365 (Colo. 1985). The district court “need not give a supplemental instruction if it is already encompassed in another instruction.” People v. Oram, 217 P.3d 883, 894 (Colo. App. 
13 2009), aff’d, 255 P.3d 1032 (Colo. 2011). When evaluating whether “an undefined phrase in a jury instruction is ‘so technical or mysterious as to create confusion in jurors’ minds,’” we look “at whether the phrase ‘is one with which reasonable persons of common intelligence would be familiar.’” McDonald, ¶ 57 (quoting People v. Deadmond, 683 P.2d 763, 769 (Colo. 1984)). C. Analysis ¶ 31 Concerned that the jury would mistake any harassment against Judge Ollada for retaliation under section 18-8-615, Acevedo tendered the following supplemental instruction: “[A]s retaliation or retribution against a judge . . . ” in instruction number ___ means that the credible threat or act of harassment has to be made in response to the Judge’s service as a judicial officer in order for Mr. Acevedo to be found guilty. If the credible threat or act of harassment was not done for the purpose of retaliation or retribution related to the Judge’s service as a judicial officer, then Mr. Acevedo is not guilty of retaliation against a judge. The district court denied the instruction, stating it could be “argued as to whether or not the element of retaliation or retribution was related to [Judge Ollada’s] service.” While we perceive no abuse of discretion in the district court’s ultimate ruling, we affirm on a 
14 different basis. See People v. Eppens, 979 P.2d 14, 22 (Colo. 1999) (appellate court may affirm the court’s ruling on any basis supported by the record). ¶ 32 The fourth element in the court’s retaliation instruction, quoted in full above, stated that Acevedo’s credible threat must be made “as retaliation or retribution against a judge who was serving in a legal matter assigned to the judge that involved Mr. Acevedo.” A reasonable juror of common intelligence would understand from this instruction that retaliation against a judge isn’t merely a threat made against a judge in their personal capacity, unconnected from their judicial role. As a result, the phrase “retaliation or retribution against a judge” isn’t so technical or mysterious as to create confusion in jurors’ minds, rendering Acevedo’s supplemental instruction unnecessary. McDonald, ¶ 57. ¶ 33 Accordingly, because the district court’s retaliation instruction adequately informed the jury of the law, the court didn’t abuse its discretion by denying Acevedo’s requested supplemental instruction. 
15 IV. Silence as Lack of Remorse ¶ 34 Finally, Acevedo argues that the district court erred during sentencing by considering his exercise of his right to remain silent as a lack of remorse. We agree. A. Standard of Review ¶ 35 Acevedo acknowledges that this claim is unpreserved, limiting our review to plain error. Hagos, ¶ 14. As before, plain error is both obvious and substantial, id., and we will reverse only if the error so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the sentence, People v. Elie, 148 P.3d 359, 367 (Colo. App. 2006). B. Applicable Law ¶ 36 The constitutional privilege against self-incrimination applies during sentencing. Steinberger v. Dist. Ct., 198 Colo. 59, 61, 596 P.2d 755, 757 (1979). One purpose of sentencing is to promote rehabilitation, § 18-1-102.5(1)(d), C.R.S. 2023, and “[a]n offender’s lack of remorse and failure to accept responsibility are relevant to the issue of rehabilitative potential,” People v. Lopez, 129 P.3d 1061, 1067 (Colo. App. 2005). When a defendant waives their right to remain silent and testifies at trial or sentencing, the court can 
16 consider what the defendant says, or doesn’t say, for the purposes of sentencing, including whether the defendant expresses remorse. People v. Everett, 250 P.3d 649, 664 (Colo. App. 2010). But if the defendant maintains their right to remain silent throughout trial and sentencing, the court can’t construe their silence as a lack of remorse that will support a harsher sentence. See People v. Young, 987 P.2d 889, 894 (Colo. App. 1999). ¶ 37 In Young, for example, a division of this court held that the trial court improperly considered the defendant’s silence at sentencing as a lack of remorse that justified a harsher sentence. Id. at 894-95. Given the “discretionary” nature of sentencing, the division explained that it couldn’t determine from the record whether the trial court “would have imposed the same sentence had it not considered” the defendant’s silence in the calculus. Id. at 895. The division therefore vacated the defendant’s sentence and remanded for resentencing. Id. C. Analysis 1. The Sentencing Error Was Obvious ¶ 38 Acevedo didn’t testify before or during trial, and at sentencing he turned down the opportunity to address the court based on 
17 counsel’s advice, opting instead for counsel to speak on his behalf. Defense counsel relayed Acevedo’s regrets, stated he had advised Acevedo not to speak, and requested a non-prison sentence, explaining that Acevedo satisfied the criteria for a “wellness” treatment program. ¶ 39 When sentencing Acevedo, the district court explained that it was troubled by Acevedo’s silence and his apparent lack of remorse: [I]t is a little concerning to me -- and I’ll tell everybody this -- that it is a little concerning to me that no statement was made. I have really little information before me other than what crimes were committed, that you may have a mental health issue. . . . The point is, I don’t know. And I also don’t know if you’re sorry, if you feel bad about the effect that this might have had on Judge Ollada -- you heard her speak -- and if you feel bad about the effect that this may have had on other people, including people like yourself that were evacuated from the courtroom, and if you feel bad about the fact that -- well, it seems to me -- that Judge Ollada and perhaps others are living in fear, but there’s no information on that either. ¶ 40 Although the court asked counsel multiple questions about the wellness treatment program, it ultimately sentenced Acevedo to a concurrent prison term of two years for retaliation against a judge 
18 (a class 4 felony) and one year for menacing with a deadly weapon (a class 5 felony). Both prison terms fell at the low end of the presumptive sentencing ranges. See § 18-1.3-401(1)(a)(V.5)(A), C.R.S. 2023. ¶ 41 Based on the court’s remarks, we conclude that it improperly considered Acevedo’s silence as a lack of remorse that justified, in whole or in part, a prison term rather than a sentence to the wellness treatment program. This constitutes an obvious error. The law was well established at the time of Acevedo’s sentencing that a defendant’s right to remain silent extends to the sentencing hearing. See, e.g., Young, 987 P.2d at 894-95; Steinberger, 596 P.2d at 757. ¶ 42 We aren’t persuaded otherwise by the People’s arguments. The People rely on Everett to argue that any error wasn’t obvious, pointing out that the division in that case held that a defendant’s silence can’t support a sentence in the “aggravated range.” 250 P.3d at 664. But nothing in the Fifth Amendment or section 18 of article II of the Colorado Constitution limits the constitutional right against self-incrimination to cases where the court is considering a sentence in the aggravated range. U.S. Const. amend. V; Colo. 
19 Const. art. II, § 18. It applies equally where, as here, the district court is vacillating between a non-prison sentence and a prison term at the low end of the presumptive range. ¶ 43 Moreover, Everett relied on Young and People v. Baker, 178 P.3d 1225 (Colo. App. 2007), both of which said that a defendant’s failure to express remorse can’t be used as “an aggravating circumstance” at sentencing when a defendant maintains their right to remain silent. Baker, 178 P.3d at 1234; Young, 987 P.2d at 894. We think it’s plain that “aggravating circumstance” in this context means that a trial court can’t use a defendant’s silence or failure to express remorse as a basis for increasing their sentence above the level it would otherwise impose, regardless of whether the increased sentence falls in the aggravated range. See Black’s Law Dictionary 306 (12th ed. 2024) (defining “aggravating circumstance” as “[a] fact or situation that increases the degree of liability or culpability for a criminal act”). This interpretation is also consistent with the cases cited by Young, neither of which cabins the constitutional right against self-incrimination to instances where the trial court is considering a sentence in the aggravated range. See Brake v. State, 939 P.2d 1029 (Nev. 1997); State v. Tinajero, 935 P.2d 928 (Ariz. Ct. 
20 App. 1997). To the extent Everett can be read differently, we decline to follow it. People v. Joosten, 2018 COA 115, ¶ 35 (a division of the court of appeals isn’t bound by the decisions of other divisions). 2. The Sentencing Error Was Substantial ¶ 44 We also conclude that the district court’s sentencing error was substantial because it so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the sentence. See, e.g., Elie, 148 P.3d at 366-67. ¶ 45 Although defense counsel urged the court to consider sentencing Acevedo to the wellness treatment program — an option the court appeared to be considering based on its questions to counsel — the court nonetheless imposed a concurrent prison term of two years and one year for the two convictions. The court’s discussion of its sentence was fairly brief, occupying less than five pages in the hearing transcript, and the court identified only a few factors when making its determination, including Acevedo’s silence and apparent lack of remorse. ¶ 46 This leaves us in a situation similar to Young — we can’t conclude from the record that the court would have imposed the same sentence had it refrained from considering Acevedo’s silence 
21 and apparent lack of remorse. Accordingly, similar to Young, we must reverse the sentence and remand for resentencing with directions that the district court not consider any lack of remorse that might be inferred from Acevedo’s silence. V. Disposition ¶ 47 We affirm the judgment of conviction, reverse the sentence, and remand the case to the district court for resentencing. JUDGE FOX and JUDGE GROVE concur.